SALVATORE PERILLO, CORPORATION COUNSEL FOR THE CITY OF NEWARK, APPELLANT, v. THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS, RESPONDENT.

CORPORATION COUNSEL OF THE CITY OF PATERSON, APPELLANT, v. OPINION 423 OF THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS, RESPONDENT.

Argued March 17, 1980—Decided July 1, 1980.

*Salvatore Perillo,* Corporation Counsel, argued the cause *pro se* (*Salvatore Perillo,* Corporation Counsel, attorney; *Thomas W. Matthews,* Assistant Corporation Counsel, on the brief).

*Henry Ramer,* Corporation Counsel, argued the cause *pro se* (*Henry Ramer,* Corporation Counsel, attorney; *James A. Farber,* Assistant Corporation Counsel, on the brief).

*Stephen Skillman,* Assistant Attorney General, argued the cause for *amicus curiae* Attorney General (*John J. Degnan,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel; *Dierdre M. Barz,* Deputy Attorney General, on the brief).

*Theodore J. Labrecque, Jr.,* argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

On this appeal the Court is asked to review *Opinion* 423 of the Supreme Court Advisory Committee on Professional Ethics ("ACPE" or "Advisory Committee") pursuant to *R.* 1:19–8. The subject matter of *Opinion* 423 is related directly to two earlier Advisory Committee opinions, *Opinion* 400, 102 *N.J.L.J.* 73 (1978), and *Opinion* 410, 102 *N.J.L.J.* 451 (1978). The broad issue raised here by the challenges to *Opinion* 423, and, by implication, to *Opinions* 400 and 410, involves the appropriate representational responsibilities of municipal attorneys drawn into adversarial proceedings against municipal employees. More specifically, the question posed is whether it is proper for a municipal prosecutor

or any other member of a municipal law department to represent the interests of the municipality against those of its employees, particularly its police officers, in municipal court actions and departmental hearings, such as civil service or disciplinary proceedings at the local level, as well as in subsequent appeals of such matters before state administrative agencies and the courts.

*Opinion* 423, published at 103 *N.J.L.J.* 481 (1979), was based upon an inquiry by an assistant city attorney on behalf of his six-person municipal law department. The Advisory Committee, drawing support from its prior *Opinions* 400 and 410, ruled that there is an ethical prohibition applicable to all members of the municipal law department from "acting as prosecutor" in such proceedings. *Ibid.* This Court received and granted petitions for review of this ethics opinion. 82 *N.J.* 269 (1979).

■ We now hold that a municipal attorney cannot undertake to represent the municipality or its interests in any administrative or judicial proceedings against municipal employees where, because the attorney has had regular and frequent contact with such employees in the course of handling municipal business, a person generally familiar with the affairs of the municipality could reasonably believe that an attorney in such a position would be subject to and hindered by a professional conflict of interest. Our holding is based substantially upon the appearance of ethical impropriety which, although not fully articulated in Disciplinary Rule 9–101, is nevertheless a basic ethical concept.

## I

*Opinion* 423 specifically addressed the propriety of any member of a six-person municipal law department "prosecuting city employees, including members of the police department, in departmental [*i. e.,* disciplinary] hearings at the local level and on subsequent appeals to administrative agencies (civil service) and the courts." 103 *N.J.L.J.* at 481. The Advisory Committee concluded that this inquiry was related to that considered in

*Opinion* 400, *supra*, 102 *N.J.L.J.* at 80, in which it determined that it is unethical for a municipal attorney either to represent a police officer charged with a disorderly persons offense or an indictable offense or to prosecute a police officer "in the same municipality." It also considered *Opinion* 410, *supra*, 102 *N.J. L.J.* at 451, to be directly related. The ACPE there determined that it is unethical for a municipal prosecutor to represent the city police department against a municipal police officer at a departmental hearing. The identical basis for all three ethics opinions, each disapproving the representation, was that such conduct by the municipal attorney or any member of the law department professional staff would impermissibly promote the appearance of conflict of interest since all municipal employees, including counsel, are, in the words of the Advisory Committee, " 'on the same team.' " *Opinion* 423, *supra*, 103 *N.J.L.J.* at 481.

Appellant Salvatore Perillo, Esq., Corporation Counsel for the City of Newark and head of that city's eighteen-member municipal law department, claims that "Opinion [423] prohibits him from exercising the responsibilities and duties as Chief Law Officer for the City of Newark" as conferred upon him by statute, *N.J.S.A.* 40A:9–139, and implemented by ordinance, *Newark Rev. Ordinances*, ch. 6, art. I, § 2:6–1 *et seq.* (1966), *viz*:

> The corporation counsel shall be the chief law officer of the city and the attorney of record in all proceedings wherein the city or any of its officers, boards, bodies or commissions, by reason of any suits growing out of their official position, shall be a party. He shall advise all city officials and bodies on any matters relating to the city government, when requested to do so. He shall supervise the preparation of all contracts, deeds and other documents and all statutes, ordinances and resolutions referred to the law department for preparation. [*Id.*, § 2:6–3.]

His subordinates in the law department are by extension also charged with these same duties. *Id.*, §§ 2:6–1, 2:6–8.

This same position is advanced by appellant Henry Ramer, Esq., Corporation Counsel for the City of Paterson, who heads that city's nine-member law department. The Paterson ordinance implementing *N.J.S.A.* 40A:9–139 includes the requirement that the Corporation Counsel "shall . . . [p]repare, when authorized by the council or other city authority, all charges or complaints against, and shall appear in the appropri-

ate court in the prosecution of, every person charged with a violation of a city ordinance, statute, rule or regulation." *Paterson Admin. Code*, art. 8, § 2–65(c)(6) (1974).

A similar concern is expressed by the Attorney General as *amicus curiae*. Noting the large number of cases currently prosecuted by his office on behalf of State agencies against State employees pursuant to *N.J.S.A.* 52:17A–4(e), the Attorney General points out that "[a] decision that representation in adversary proceedings with State employees creates a conflict of interest in violation of the Disciplinary Rules [would] place the Attorney General in a position in which his legal duty is in irreconcilable conflict with what would be determined to be his ethical responsibility." *Cf. DR* 5–105 (prohibiting an attorney from accepting or continuing employment when the interests of another client could impair the attorney's independent professional judgment).

The basis for the Advisory Committee's conclusion in *Opinion* 423 that it would be unethical for a municipal attorney to represent the municipality in virtually any proceeding directed against any municipal employee was the potentially strong appearance of professional conflict of interest and divided loyalty that such representation would engender. In referring to its earlier *Opinions* 400 and 410, the Advisory Committee concluded that

> [b]oth [earlier] opinions are bottomed on the appearance of conflict and the view of the public that the municipal prosecutor and the police and, for that matter, all municipal employees, are "on the same team." Having found the initial conflict, that conflict continues through the various appellate levels. The inquirer further requests clarification whether this bar would apply to all members of the municipal law department. To propose the question is to answer it. Given the basis for the opinion, that is, the "appearance of conflict," any member of the municipal "family" would be barred from acting as prosecutor. [*Opinion* 423, *supra*, 103 *N.J.L.J.* at 481.]

As so often holds true in cases involving an attorney's professional ethics, we must here deal not merely with the presence of actual or likely conflict of interest. Rather, we must confront the vexatious problem of the appearance of such impropriety and determine whether such appearance is sufficiently compelling to necessitate disqualification of counsel from representing

certain clients in certain situations. See *DR* 9–101. As this Court stated in *In re Cipriano*, 68 *N.J.* 398, 403 (1975), "[t]o maintain public confidence in the bar it is necessary that the appearance of, as well as actual, wrongdoing be avoided." Accord, *In re Opinion No. 415*, 81 *N.J.* 318, 323 (1979); *Higgins v. Advisory Committee on Professional Ethics*, 73 *N.J.* 123, 128–129 (1977); *ABA Code of Professional Responsibility, Canon* 9.

■ The vantage from which such "appearance" must be evaluated is not that of the attorney involved, but rather is that of the public. *In re Opinion No. 415, supra*, 81 *N.J.* at 325; see *In re Wilson*, 81 *N.J.* 451, 456 (1979). "Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice." *State v. Rizzo*, 69 *N.J.* 28, 30 (1975); accord, *In re Opinion No. 415, supra*, 81 *N.J.* at 323. "Integrity is the very breath of justice. Confidence in our law, our courts and in the administration of justice is our supreme interest. No practice must be permitted to prevail which invites toward the administration of justice a doubt or distrust of its integrity." *Erwin M. Jennings Co. v. DiGenova*, 107 *Conn.* 491, 499, 141 *A.* 866, 868 (Sup.Ct. Errors 1928).

■ This "appearance of impropriety" doctrine, underlying this Court's Disciplinary Rule 9–101 ("Avoiding Even the Appearance of Impropriety"), "is intended to instill public confidence in the integrity of the legal profession." *In re Opinion No. 415, supra*, 81 *N.J.* at 323. See *ABA Code of Professional Responsibility, Canon* 9. The necessity to dispel all appearances of any impropriety becomes even more compelling when the attorney is a government attorney, *i. e.*, an attorney invested with the public trust. Such "[p]ositions of public trust call for even more circumspect conduct." *In re Opinion No. 415, supra*, 81 *N.J.* at 324 (footnote omitted); see M. Freedman, *Lawyers'*

*Ethics in an Adversary System* 80 (1975); R. Wise, *Legal Ethics* 258 (2 ed. 1970).[1]

## II

In addressing the broader ethical questions, all parties in these proceedings have expressed special concern over the propriety of the participation of municipal attorneys in administrative and judicial proceedings directed against police officers. Police officers, as a distinctive class of public employees, have been a recurrent subject of inquiries to the Advisory Committee. See, *e.g., Opinion 423, supra; Opinion 410, supra; Opinion 400, supra; Opinion 394*, 101 *N.J.L.J.* 417 (1978); *Opinion 252*, 96 *N.J.L.J.* 305 (1973); *Opinion 162*, 92 *N.J.L.J.* 726 (1969); *Opinion 140*, 91 *N.J.L.J.* 805 (1968); *Opinion 104*, 90 *N.J.L.J.* 49 (1967).

There are unquestionably certain characteristics which are unique in the relationship between the municipal attorney and the municipal police officer. Both the municipal police officer and the municipal attorney are charged with major responsibilities in the effectuation of the criminal justice system at the

---

[1]The "appearance of impropriety" rule is criticized in the recent Discussion Draft of the Model Rules of Professional Conduct by the American Bar Association's Commission on Evaluation of Professional Standards (the "Kutak Commission"), 105 *N.J.L.J.* 265 (1980), as being "question-begging" as applied to vicarious disqualification of attorneys. Comment to Rule 7.1. The preparers of that report apparently perceived as the only focus of that rule, the actual client, and as its only proper goals, the preservation of client confidences and the avoidance of taking positions actually adverse to that client. *Ibid.* As this Court has frequently reiterated, however, the "appearance of impropriety" is viewed not from the client's position, but rather from that of the knowledgeable public. *E. g., In re Opinion No. 415*, 81 *N.J.* 318, 325 (1979). The precise situation presented in the *instant case*, however, is not specifically addressed in the Discussion Draft. See the evaluation report in response thereto by a New Jersey State Bar Association (NJSBA) special committee, 105 *N.J.L.J.* 441 (1980), recommending retention of the structure of the current ABA Code of Professional Responsibility (CPR) and noting the apparent abandonment of the "appearance of impropriety" rule as embodied in *Canon 9* of the CPR. 105 *N.J.L.J.* at 451. The NJSBA committee also recommended further explication "with respect to conflicts of interest on the part of lawyers representing governmental agencies[,]" noting that "[i]n such situations, the term 'appearance of impropriety' might be more appropriately considered an ethical consideration rather than a 'rubric.' " *Ibid.*

local level—the apprehension and prosecution of violators of municipal ordinances as well as state criminal and quasi-criminal laws. There is in this endeavor within the field of law enforcement a singleness of purpose and shared responsibility between municipal prosecutors and municipal police officers.

Where there is in fact closeness, continuity, and regularity in such a professional relationship between a municipal attorney and municipal police officers, this creates a genuine ethical dilemma should the municipal attorney be required to engage in an adversarial proceeding against a municipal police officer. An actual conflict, for example, might occur in a case where the police officer and municipal attorney engage in the prosecution of a crime or other offense which later becomes the subject matter of a subsequent civil or disciplinary action against the police officer. The officer's knowledge that the municipal attorney might possibly be required to prosecute the officer in subsequent proceedings arising from the officer's handling of the earlier offense and that statements made by the officer to the attorney would be available for use against him or her could conceivably undermine the confidentiality required between the attorney and the officer and thereby seriously hinder their free and open exchange of information relevant to the prosecution of offenses. *Cf. DR* 4–101 (preservation of client's confidences and secrets). Conversely, an attorney may have developed genuine personal beliefs as to the officer's integrity or public conduct which would interfere with his professional loyalty and objectivity in later representing the municipality against the officer. See *Opinion* 400, *supra* ; *cf. DR* 5–105; see also *Opinion* 351, 99 *N.J.L.J.* 798 (1976); *Opinion* 140, *supra*.

As important as the actuality or likelihood of conflicting interests and divided loyalty is the public perception of such a professional schism in that kind of situation. "[T]he public would have the tendency to believe that the municipal prosecutor would be less than zealous in his prosecution of a municipal police officer." *Opinion* 394, *supra*, 101 *N.J.L.J.* at 417, 432. It may be that in many municipal settings, it is generally felt that municipal prosecutors and police officers act together on a

regular basis and are thus functionally on the "same team" in the discharge of their official duties. Such close working relationships would understandably foster the public belief that, in an adversary prosecution of a municipal police officer by a municipal attorney, there might well be an actual or subconscious temptation for the attorney to compromise the public interest. The real possibility that the attorney's professional vigor on behalf of the municipality might be weakened, even subconsciously, by his familiarity with the charged police officer cannot be discounted.

A perception by the public of divided allegiance and diminished professional commitment on the part of the attorney, whether accurate or not, would be normal and entirely reasonable where a municipal attorney has worked closely with the police on a regular basis. This kind of situation thus impermissibly generates in a later adversarial proceeding against the police officer the appearance of impropriety with respect to the municipal attorney. "We agree that the 'appearance' of impropriety must be something more than a fanciful possibility. It must have some reasonable basis . . . [and], where as here, a reasonable basis is shown to exist, 'appearance' alone may be sufficient to present an ethical problem even though no actual impropriety exists." *Higgins v. ACPE, supra,* 73 *N.J.* at 129. See *DR* 9–101; *cf. ABA Informal Opinion* 1282 (1973) (representation of police by city corporation counsel when counsel may have conflicting duty to represent city).[2]

We thus conclude that in many situations involving close, ongoing professional relationships, it would constitute unethical conduct for a municipal attorney to become engaged on behalf

---

[2]These considerations also obtrude in the converse situation. By statute, municipal attorneys are required to defend municipal police officers against actions arising out of the performance of their duties. *N.J.S.A.* 40A:14–155. Under that statute, however, where such proceedings involve disciplinary or criminal charges by the municipality, the police officers must proceed with independent counsel, albeit the officer is entitled to reimbursement for the expenses of a successful defense of the charge. See *Van Horn v. City of Trenton,* 80*N.J.* 528 (1979) (interpreting *N.J.S.A.* 40A:14–155); *Township of Edison v. Mezzacca,* 147 *N.J.Super.* 9 (App.Div.1977).

of the municipality in an adversarial administrative or judicial proceeding directed against a police officer employed by the same municipality. The basis for such holding is the strong appearance of impropriety arising from the potential for actual conflict of interest.

In reaching this conclusion, we are necessarily mindful of those situations in which the representation by the municipal attorney would not constitute a breach of ethical strictures. There obviously are situations in which a municipal attorney may be requested to represent municipal interests against a municipal police officer that would not realistically engender the appearance of impropriety. If it can be shown, for example, that the attorney has had only irregular or occasional dealings with the police, there may be an insufficient basis for a belief that conflicting interests will ensue in a later adversarial proceeding. Moreover, in a given case, either the municipal law department may have a sufficient number of attorneys or the municipal attorneys may have functioned on a structured basis under supervised assignments so that regular contacts by particular attorneys with police officers have been avoided. In such situations, there would be no adequate basis on the part of a reasonably informed member of the public for assuming that all such municipal attorneys belong to the "same team" as all police officers. In such instances, any perceived appearance of inconsistent interests or divided loyalty would not be well-founded, and there would thus be nothing improper in such an attorney representing the municipality in adversarial proceedings directed against the local police officers.

In sum, we conclude that, as applied to municipal police officers, *Opinion* 423 of the Advisory Committee posits an ethical rule which is unnecessarily broad in its application. We now hold that such representation would be unethical only in situations where there is an adequate basis for a belief on the part of members of the public reasonably familiar with municipal affairs that municipal police officers and municipal attorneys have worked together so closely and regularly that they could not be drawn into adversarial positions in later administrative and

judicial proceedings without fostering the appearance of a conflict of interest.

## III

While much of the argument advanced by the parties in these proceedings has been concentrated upon the status of a municipal attorney vis-á-vis municipal police officers, the inquiry presented to the Advisory Committee extended to "civilian" employees as well. Adversarial proceedings involving municipal attorneys and non-police municipal employees invite somewhat different perceptions than those involving local police officers.

Even where attorneys and civilian employees are employed by the same municipality, their working relationships are not commonly so close and continuous as to foster a popular belief that the attorneys and civilian employees are "on the same team," in the sense that the expression has been used by the Advisory Committee itself. See *Opinions* 394, 400 and 410. The "same team" concept referred to by that phrase may have some application to municipal police officers and municipal attorneys where officers and lawyers are mutually and jointly responsible for effectuating law enforcement and usually work closely together to this end. There is no empirical basis, however, for the belief that the public generally views *all* municipal employees in the same light as it sees police officers in this regard. Hence, in an adversary proceeding against a municipal employee, the strength of the appearance of divided loyalties and conflicting interests on the part of the attorney, which appearance is frequently exhibited when that employee is a police officer, may be considerably weakened if the employee is not a police officer.

■ Accordingly, the ethical propriety of a municipal attorney engaging in an adversarial proceeding against a non-police employee must turn on the actual relationship between the participants in such a hearing and the specific circumstances of each particular case. There should, therefore, be no general prohibition against a municipal attorney representing the municipality in an adversarial proceeding at the local level, or in any subse-

quent administrative and judicial appeals, directed against a municipal employee who is not engaged in law enforcement.

██ There will, of course, be instances in which such representation would not be ethical, as where there is an actual conflict of interest or the strong appearance of such a conflict in a particular case. For example, a municipal attorney may in fact have been assigned to or been involved in official matters involving the particular municipal employee or the department in which the employee works and may have, in that fashion or in some other way, become privy to information which could create divided loyalty in a later proceeding. See *DR* 4–101; *DR* 5–105. Moreover, even though such an attorney may not have known the particular employee or have earlier become privy to information now relevant in a later proceeding, there may nevertheless be a well-founded belief that he or she has had such prior exposure or knowledge thus creating an appearance of conflict of interest and, hence, an appearance of impropriety. See *In re Opinion No. 415, supra,* 81 *N.J.* at 326; *DR* 9–101. Such circumstances would dictate the disqualification of that municipal attorney from representing the interest of the municipality against that particular employee.

██ It must also be recognized, however, that while in general it might not be thought by the citizenry that municipal attorneys and non-police municipal employees function together closely and regularly as members of the "same team," there may be situations in a particular municipality where there is a well-grounded belief on the part of persons knowledgeable as to that municipality that there exists such substantial continuing professional proximity between municipal attorneys and certain employees. For example, over a prolonged period of time a municipal attorney and such employees as the local zoning officer, the local building inspector, or municipal health personnel may have been mutually and jointly engaged officially in advancing or prosecuting municipal interests in the respective areas of zoning and planning, building codes or health codes.

That kind of cooperative governmental effort might realistically foster an impression of official teamwork and closeness sufficient to lay the foundation for a later actual conflict of interest or the strong appearance of such a conflict. As a result, disqualification of the attorney in subsequent adversarial proceedings would be necessary.

It should be acknowledged that these ethical principles primarily apply to municipalities and municipal attorneys since *Opinion* 423, the opinion under review, deals specifically with municipalities. Nevertheless, the analogy between municipal corporations and other governmental entities sharing the common problem of utilizing their staff attorneys in adversary proceedings against their other employees must, if nothing more, be recognized. This consideration has caused us to take some account of the position advanced by the Attorney General as *amicus curiae* in this case. *Ante* at 372. It may be noted that at oral argument counsel for the Advisory Committee specifically acknowledged that the ethical rule posited by *Opinion* 423 was intended to have no application to the Office of the Attorney General. We have by this opinion substantially modified *Opinion* 423. It may be observed in this connection that the ethical standards which we here espouse should suffice as general guidelines to enable attorneys employed by the Attorney General to determine the ethical propriety of their representation of the State's interests in adversarial proceedings against State employees in a given case.

Accordingly, *Opinion* 423 of the Advisory Committee on Professional Ethics is modified and, as modified, is affirmed.

*For modification and affirmance* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.