911 A.2d 51

IN RE SUPREME COURT ADVISORY COMMITTEE ON PROFESSIONAL ETHICS OPINION NO. 697.

Argued September 25, 2006—Decided December 8, 2006.

550

*Frederick J. Dennehy,* argued the cause for appellant, Wilentz, Goldman & Spitzer, P.A., *(Wilentz, Goldman & Spitzer, P.A.,* attorneys).

*Dean Jablonski,* Deputy Attorney General, argued the cause for respondent, Supreme Court Advisory Committee on Professional Ethics *(Anne Milgram,* Acting Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Aney K. Chandy,* Assistant Attorney General, on the brief).

*David H. Dugan, III,* argued the cause for *amicus curiae,* New Jersey State Bar Association (*Stuart A. Hoberman,* President, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we re-examine the proscription governing concurrent representation by a lawyer or law firm of both a public entity and a private client before one of the boards or agencies of that public entity. Responding to two specific inquiries posed by appellant Wilentz, Goldman & Spitzer, P.A., the Advisory Committee on Professional Ethics (Advisory Committee) concluded that

> an attorney, law firm, or office associates of that attorney or law firm, representing a municipal body subject to the governing entity's budgetary, membership, or decision-making control, is precluded from representing a private client before (or in a litigated matter against) the governing body, its executive, its legislature, any policy making official in an official capacity, or any office, department, division, bureau, board, commission, or agency, or other body subject to that governing entity's budgetary, membership, or decision making control, and specifically in this case, before the municipal court.
>
> [*Opinion 697,* 181 *N.J.L.J.* 536, 14 *N.J.L.* 1563 (Aug. 8, 2005) ·(footnote omitted).]

In light of the 2004 amendments to the *Rules of Professional Conduct* that eliminated New Jersey's long-standing prohibition against the appearance of impropriety and the contemporaneous adoption of *R.P.C.* 1.8(k),[1] we hold that the appearance of impropriety standard no longer retains any continued validity. We further hold that the provisions of *R.P.C.* 1.8(k) govern all instances in which a lawyer or a law firm employed or retained by a public entity, either as a lawyer or in some other capacity, seeks to undertake the representation of another client before that public entity or its board or agencies, including, if applicable, its

---

[1] *R.P.C.* 1.8(k) provides that "[a] lawyer employed by a public entity, either as a lawyer or in some other role, shall not undertake the representation of another client if the representation presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client."

municipal court. In respect of the application of *R.P.C.* 1.8(k), we reaffirm the continuing vitality of the "municipal family doctrine," [2] albeit in a scope less expansive than the one urged by the Advisory Committee. We therefore reverse *Opinion 697*, and specifically hold that an attorney who plenarily represents a municipal governing body is barred from representing private clients before that governmental entity's governing body and all of its subsidiary boards and agencies, including its courts. However, an attorney who plenarily represents an agency subsidiary to the governmental entity's governing body is barred from representing private clients before that subsidiary agency only. Finally, if the scope of an attorney's engagement by a governmental entity is not plenary but limited, that attorney and his or her law firm are exempt from the strictures of the now-limited "municipal family doctrine;" however, the scope of the engagement is relevant in determining whether the proscriptions of *R.P.C.* 1.8(k) have been observed. In the final analysis, the response to the two specific inquiries posed by appellant in respect of limited scope engagements is that there is no *per se* bar.

---

[2] The "municipal family doctrine" generally provides that, in order to avoid the appearance of impropriety, a lawyer or law firm may not contemporaneously represent two public agencies, boards, or courts within the same public entity. *In re Opinion 452 of the Advisory Comm. on Prof'l Ethics*, 87 *N.J.* 45, 432 *A.2d* 829 (1981). The doctrine also prohibits the concurrent representation of a public entity or its agencies, boards or courts, and private clients before that public entity or its agencies, boards, or courts. *In the Matter of Inquiry to the Advisory Comm. on Prof'l Ethics Index No. 58–91(B)*, 130 *N.J.* 431, 616 *A.2d* 1290 (1992); *Opinion 4*, 86 *N.J.L.J.* 357 (June 27, 1963).

We have explained that "[a] municipal family frequently includes a municipal attorney, who serves as counsel to the governing body; a municipal prosecutor, who prosecutes minor criminal offenses such as violations of traffic laws and ordinances; an attorney for the board of adjustment; and an attorney for the planning board. The avoidance of the appearance of impropriety in holding more than one of those positions has been a matter of continuing concern to this Court." *In re Opinion 452, supra*, 87 *N.J.* at 48, 432 *A.2d* 829. The doctrine also has been described as encompassing those who are "on the same team," *Perillo v. Advisory Comm. on Prof'l Ethics*, 83 *N.J.* 366, 378, 416 *A.2d* 801 (1980) (citations and internal quotation marks omitted), or those who are part of an "official family," *Opinion 104*, 90 *N.J.L.J.* 49 (Jan. 26, 1967).

## I.

## A.

■ This Court's authority to regulate the legal profession is of constitutional dimension. *N.J. Const.* art. VI, § 2, ¶ 3 (providing that "Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted"); *First Am. Title Ins. Co. v. Lawson,* 177 *N.J.* 125, 139, 827 *A.*2d 230 (2003); *see also In re LiVolsi,* 85 *N.J.* 576, 585, 428 *A.*2d 1268 (1981) (explaining that, since adoption of New Jersey's 1947 Constitution, "this Court has exercised plenary, exclusive, and almost unchallenged power over the practice of law in all of its aspects...."). Exercising that jurisdiction, "[i]n 1984, th[is] Court adopted the *Rules of Professional Conduct* in an effort to harmonize New Jersey's standards with the Model Rules [of Professional Conduct of the American Bar Association (ABA)] and to provide clear, enforceable standards of behavior for lawyers." *State v. Rue,* 175 *N.J.* 1, 14, 811 *A.*2d 425 (2002) (formatting added).

More recently, revisions to New Jersey's *Rules of Professional Conduct* were suggested by the Pollock Commission. As one of the commentators on this subject explained,

> in 2001, the Supreme Court created a Commission to review New Jersey's *R.P.C.s* in light of the changes to the Model Rules made by the ABA's "Ethics 2000" Commission. New Jersey's Commission, chaired by retired Justice Stewart Pollock and known as the Pollock Commission, responded in 2002 with suggested revisions to New Jersey's *R.P.C.s* .... After a comment period and a public hearing, the Supreme Court adopted extensive amendments to the *R.P.C.s* and the Court Rules in November of 2003, to be effective on January 1, 2004.
>
> [Kevin H. Michels, *New Jersey Attorney Ethics—The Law of New Jersey Lawyering* 4 (2006) (*N.J. Attorney Ethics*) (formatting added).]

That commentator also explained that "[p]erhaps the most significant change effected by the 2004 amendments to the *R.P.C.s*—certainly the most anticipated—was the elimination of New Jersey's 'appearance of impropriety' doctrine." *Id.* at 359.

That change, coupled with the contemporaneous adoption of new *R.P.C.* 1.8(k), lies at the core of this appeal.

## B.

In its submission dated April 13, 2005, appellant posed a "two part inquiry" to the Committee. As appellant explained, its "inquiry d[id] not seek a broad determination by the [Advisory] Committee, but rather guidance on the question of whether, given the rule changes adopted on January 1, 2004, certain simultaneous representations are *per se* prohibited[.]" According to appellant, "[t]he inquiry [wa]s that narrow—it d[id] not seek the [Advisory] Committee's 'blessing' as to the permissibility of multiple instances of dual representation, but only its concurrence that not all dual representational configurations entailing the pattern outlined herein would necessarily be prohibited." Appellant's specific inquiries were as follows:

> Is a law firm *per se* precluded from serving simultaneously as bond counsel for the governing body of a municipality and representing a private client before one of the boards or agencies (including the municipal court) of the municipality?
>
> Is a law firm *per se* precluded from serving simultaneously as special litigation counsel for the governing body of a municipality and representing a private client before one of the boards or agencies (including the municipal court) of the municipality, assuming it has received no non-public information from that board or agency that is not specifically related to the discrete litigation in question?

By a letter dated September 6, 2005, the Advisory Committee formally responded to appellant's inquiries. As background, the Advisory Committee explained that appellant's "inquiries regarding the propriety of a law firm simultaneously representing a municipality and private clients before boards or bodies controlled by that municipality is similar to another query recently addressed by this Committee." It concluded that "[f]or the reasons set forth in *Opinion 697*, the contemplated representation would pose a direct conflict in violation of *R.P.C.* 1.7." (citation omitted).

Pursuant to *Rule* 1:19–8(a), appellant filed its petition for review before this Court and, as required by *Rule* 1–19:8(f), the Attorney General responded. We granted the petition, *In re Supreme Court Advisory Committee on Professional Ethics Opinion No. 697,* 186 *N.J.* 250, 893 *A.*2d 719 (2006). We also granted the application of the New Jersey State Bar Association (State Bar) for leave to appear *amicus curiae.*

## II.

Appellant asserts that *Opinion 697* was wrongly decided in several respects. First, appellant claims that *Opinion 697's* reliance on the "municipal family doctrine" is incorrect because that doctrine is premised, at least in part, on the now-abandoned "appearance of impropriety" doctrine codified in former *R.P.C.* 1.7(c). Alternatively, appellant argues that, if the "municipal family doctrine" retains its validity, the factual underpinnings of appellant's inquiries moot any of the concerns implicated by that doctrine. Next, appellant argues that newly adopted *R.P.C.* 1.8(k) governs this inquiry, even though it was not substantively discussed in *Opinion 697*. Third, appellant explains that the Advisory Committee's interpretation of the general conflict of interest rule codified at *R.P.C.* 1.7(a) is too expansive, thereby rendering *R.P.C.* 1.8(k) a nullity. Finally, appellant distinguishes all of the earlier *Opinions* on which the Advisory Committee relies for the same reason: they were based on the now-discarded "appearance of impropriety" doctrine.

The Advisory Committee responds that, applying the "municipal family doctrine," *Opinion 697* is premised on a finding of a direct conflict of interest, in violation of *R.P.C.* 1.7(a) and not on the "appearance of impropriety" doctrine.[3] It asserts further that, although the "appearance of impropriety" doctrine was deleted as a specific *Rule of Professional Conduct*, the normative precept that doctrine embodies retains its vibrancy as an ethical concept and, hence, its application as a factor in determining the propriety of dual representation claims is proper. Finally, the Advisory Committee rejects the application of *R.P.C.* 1.8(k) to the circumstances presented because it believes it unwise to leave to a lawyer's judgment the determination whether "the representation

---

[3] The Advisory Committee limited its discussion of *R.P.C.* 1.8(k) to a brief footnote. *Opinion 697, supra,* 181 *N.J.L.J.* 536 n. 4, 14 *N.J.L.* 1563 n. 4 ("We note that there is also a question concerning the applicability of *R.P.C.* 1.8(k), but we need not reach it in this inquiry because there is a direct conflict prohibited by *R.P.C.* 1.7.") (formatting added).

presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client." *R.P.C.* 1.8(k).[4]

*Amicus* the State Bar urges that we overrule *Opinion 697.* According to the State Bar, *R.P.C.* 1.8(k) was intended to replace former *R.P.C.* 1.7(c) in respect of dual representation matters involving a public entity and, therefore, the "appearance of impropriety" doctrine no longer controls. Rejecting the "municipal" or "official family doctrine," it argues that the "public entity" should be limited to the specific public entity that retained the lawyer or law firm, thereby allowing dual representation before related public entities of equal or superior status. As parallel support for that proposition, the State Bar points to *R.P.C.* 1.11 (governing conflicts of interest arising from successive government-then-private employment by lawyers).

## III.

### A.

The text of *Opinion 697* defines the point of departure for our analysis. Starting from the proposition that "an attorney who represents a municipality or any of its agencies has as his client the entire municipality[,]" *supra*, 181 *N.J.L.J.* 536, 14 *N.J.L.* 1563 (citation and internal quotation marks omitted), the Advisory Committee concluded that "once the client is determined to be the municipality itself, there would be a concurrent conflict in representing a private client before or against one of its subordinate instrumentalities." *Ibid.* (citation and footnote omitted). The Advisory Committee explained that

---

[4] The Advisory Committee also claims that its conclusions in *Opinion 697* are consonant with the Local Government Ethics Law, *N.J.S.A.* 40A:9–22.1 to – 22.25. Because that issue is squarely presented in *Opinion 705*, 184 *N.J.L.J.* 390, 15 *N.J.L.* 1045 (May 15, 2006), *petition for review granted*, ⸺ *N.J.* ⸺ (2006), we defer its consideration.

> [c]ounsel representing an adjunct agency of a municipal government must make a choice as to whether they desire to represent the agency and thus preclude the practice by themselves and members of their firms before the various boards and bodies of the municipal government, or whether they believe it to be more advantageous to decline representation of the agency and represent private clients before the same public bodies.
>
> [*Ibid.* (citation omitted).]

It further explained that, "[t]o aid practitioners in determining if a particular public body is an adjunct agency of a municipal government, the test is whether the agency is subject to the municipal government's budgetary, membership, or decision-making control." *Ibid.* (citation omitted).

Although the logic supporting that conclusion is commendable—and, indeed, hortatory to all lawyers—we hold that the conclusion ultimately reached by the Advisory Committee can no longer obtain. Although "appearance of impropriety concerns have not been rendered wholly moribund[,]" *State v. Davis*, 366 *N.J.Super.* 30, 44, 840 *A.*2d 279 (App.Div.2004), "echoing nearly 20 years of criticism of the doctrine [this Court has adopted] the deletion of all 'appearance of impropriety' language from the *R.P.C.s*." *N.J. Attorney Ethics, supra* at 359. In its stead, joint representations of both public and private entities "that were banned under the appearance doctrine should now be evaluated under both *R.P.C.* 1.7 and *R.P.C.* 1.8(k)." *Id.* at 361. We now turn to that shift—from the "appearance of impropriety" standard to actual conflicts—and to the necessary adjustments in how public/private dual representation conflicts are gauged as occasioned by that change.

## B.

Our general rule in respect of conflicts of interest is clear: "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." *R.P.C.* 1.7(a). We countenance only one exemption from this general rule: dual representations involving conflicts of interest that are (1) waived in writing by the clients, based on informed consent after full disclosure; (2) based on the lawyer's reasonable belief that the dual representation can

be undertaken competently and diligently; (3) not otherwise prohibited by law; and (4) not representations involving actual adversity, that is, the assertion of a claim by one client directly against the other client. *R.P.C.* 1.7(b).

Given the special nature of public entities and the unique issues arising from their representation, however, "a public entity cannot consent to any such [dual] representation." *R.P.C.* 1.7(b)(1). We made this rule clear almost a half-century ago: "Where the public interest is involved, [an attorney] may not represent conflicting interests even with consent of all concerned." *Ahto v. Weaver*, 39 *N.J.* 418, 431, 189 *A.*2d 27 (1963) (citations omitted). *See also R.P.C.* 1.8(*l*) (setting forth specific rules applicable to dual representations in which conflicts of interest involving current clients arise, but stating that "[a] public entity cannot consent to a representation otherwise prohibited by this *Rule.*") (formatting added); *In re A. & B.*, 44 *N.J.* 331, 334, 209 *A.*2d 101 (1965) (citing Chief Justice Weintraub, "Notice to the Bar," 86 *N.J.L.J.* 713 (1963) (explaining that, where attorney for public agency also represents private client whose interests come before or are affected by public agency, "the attorney has the affirmative ethical responsibility immediately and fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and the private client *with respect to such matter*, and to recommend to the municipality or agency that it retain independent counsel.")).

Thus, in the representation of public entities, the same question delimits the beginning and the end of the inquiry: whether a conflict of interest exists. It is that question on which we now focus.

## IV.

### A.

The inquiries before the Advisory Committee are simply summarized: may an attorney specially retained by a municipality for

a discrete engagement—either as bond counsel or as special litigation counsel—nevertheless appear before that municipality's agencies and boards. Applying the conflict of interest rules set forth in *R.P.C.* 1.7(a)(1) and *Rule* 1:15–3(b), the Advisory Committee couched the issue before it as requiring an "examin[ation of] the relationship between the entity represented and the municipality to determine whether counsel for the entity in fact has the municipality as a client for purposes [of] determining the existence of a conflict with the interests of the attorney's private client." *Opinion 697, supra,* 181 *N.J.L.J.* 536, 14 *N.J.L.* 1563.

As relied on by the Advisory Committee, *R.P.C.* 1.7(a) specifically provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest[,]" and defines two general categories where a "concurrent conflict of interest" may exist. The first of these, defined at *R.P.C.* 1.7(a)(1), addresses instances when "the representation of one client will be directly adverse to another client[.]" As also relied on by the Advisory Committee, *Rule* 1:15–3(b) states that "[a] municipal attorney of any municipality shall not represent any defendant in the municipal court thereof, except to perform official duties...."

Based on what it viewed as the confluence of these two *Rules* and applying the "municipal family doctrine," the Advisory Committee concluded that if "the board, body, or authority at[ ] issue was a subordinate instrumentality of their municipal government[, then] the proposed representation of private clients before or against any other municipal agency was improper." *Opinion 697, supra,* 181 *N.J.L.J.* 536, 14 *N.J.L.* 1563. It reasoned that "in determining if a particular public body is an adjunct agency of a municipal government, the test is whether the agency is subject to the municipal government's budgetary, membership or decision-making control[.]" *Ibid.* (citing *Opinion 292,* 97 *N.J.L.J.* 809 (Oct. 17, 1974)). It explained that "[i]f it is subject to any of these controls, the body is an instrumentality of that governing entity for purposes of the conflicts addressed in this opinion." *Ibid.* It further explained, conversely, that "[b]odies not subject to such

control are autonomous and not considered to be part of the particular municipal government for purposes of conflict of interest analysis." *Ibid.* It concluded as follows:

an attorney, law firm, or office associates of that attorney or law firm, representing a municipal body subject to the governing entity's budgetary, membership, or decision-making control, is precluded from representing a private client before (or in a litigated matter against) the governing body, its executive, its legislature, any policy making official in an official capacity, or any office, department, division, bureau, board, commission, or agency, or other body subject to that governing entity's budgetary, membership, or decision making control, and specifically in this case, before the municipal court.

[*Ibid.*]

That is the conclusion challenged by appellant, a conclusion we reject as overbroad.

## B.

The distinctions drawn by the Advisory Committee appear in its earliest opinion addressing conflicts of interest in respect of public entities, where it concluded expansively that

[i]n a broad sense an attorney representing a municipality or any of its agencies has as his "client" the entire municipality, and he should avoid any retainers from others which may place him in a position where he appears to be either seeking relief or favor from the municipality or any of its agencies for a private client or to oppose action by the municipality or its agencies on behalf of a private client. If he did so, it would be inevitable that, if he were successful, the losing litigant, or the public in general, would be troubled by suspicion that his success in the matter was attributable to improprieties and that his position or influence as a municipal attorney might have furthered the cause of the private client.

[*Opinion 4*, 86 *N.J.L.J.* 357 (June 27, 1963).]

In the Advisory Committee's traditional view, the proposition is succinctly stated: "Unless the governing body of the municipality controls the agency, in the sense of controlling its membership or its budget, the agency is not an adjunct of the municipality." *Opinion 292*, 97 *N.J.L.J.* 809 (Oct. 17, 1974).

The genesis of this view is found in former *R.P.C.* 1.7(c)(2), which provided that

in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would

conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

[*R.P.C.* 1.7(c)(2) (repealed Nov. 17, 2003, effective Jan. 1, 2004).]

As the pre–2004 *Comment to R.P.C. 1.7* explained,

[t]he court has also included language in new paragraph (c) so as to expressly preserve in New Jersey the "appearance of impropriety" rule. *See, e.g., In re Garber,* 95 *N.J.* 597, 609–10, 472 *A.*2d 566 (1984); *Reardon v. Marlayne, Inc.,* 83 *N.J.* 460, 470, 416 *A.*2d 852 (1980); *Perillo v. Advisory Committee on Professional Ethics,* 83 *N.J.* 366, 373, 416 *A.*2d 801 (1980); *Higgins v. Advisory Committee on Professional Ethics,* 73 *N.J.* 123, 128–29, 373 *A.*2d 372 (1977). That "appearance" rule "is intended to instill public confidence in the integrity of the legal profession." *In re Opinion No. 415,* 81 *N.J.* 318, 323, 407 *A.*2d 1197 (1979); *see id.* at 323–34, 407 *A.*2d 1197.

[*N.J. Attorney Ethics* 1190 (formatting added).]

▮ However, as part of the 2004 amendments to the *Rules of Professional Conduct* and as recommended by the Pollock Commission, we "[e]liminated the "appearance of impropriety" language from the Rules of Professional Conduct[.]" Supreme Court of New Jersey, "Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct" (Sep. 10, 2003), *reprinted in N.J. Attorney Ethics* 1134. We relied on the recommendation of the Pollock Commission, which remarked that "[n]o rule has engendered as much criticism as that constituting 'the appearance of impropriety' as a separate ethics violation." *Id.* at 1141. The Pollock Commission concluded that "[b]ecause of their vagueness and ambiguity, [the appearance of impropriety provisions of the *R.P.C.s*] are not appropriate as ethics standards[,]" noting that "[a]s an ethics concept, the appearance of impropriety is too vague to support discipline." [5] *Id.* at 1142. Hence, "[f]or

---

[5] Although the Pollock Commission urged the abandonment of the "appearance of impropriety" rule, it "acknowledge[d] that a court properly may consider the appearance of impropriety as a factor in determining that multiple representation poses an unwarranted risk of disservice either to the public interest or to the interest of a client." *Ibid.* In light of our ultimate holding in this matter and because it injects an unneeded element of confusion, we reject the appearance of impropriety as a factor to be considered in determining whether a prohibited conflict of interest exists under *R.P.C.* 1.7, 1.8 or 1.9. *See generally N.J. Attorney*

the reasons stated by the [Pollock] Commission in its report and as set forth above, the Court approve[d] the elimination of the 'appearance of impropriety' language from the *R.P.C.s.*" *Id.* at 1142–43 (formatting added).

Contemporaneously, we adopted a specific *Rule of Professional Conduct* to address multiple representation issues in the context of public entities:

> A lawyer employed by a public entity, either as a lawyer or in some other role, shall not undertake the representation of another client if the representation presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client.
>
> [*R.P.C.* 1.8(k).]

We explained that the shift in emphasis from the "appearance of impropriety" rule to the standard set forth in new *R.P.C.* 1.8(k) was to "place[ ] an obligation on lawyers for public entities to assess whether client representation would present a substantial risk to the lawyer's responsibilities to the public entity." *N.J. Attorney Ethics* 1145.[6] In a multiple representation involving public entities, "representations that were banned under the appearance doctrine should now be evaluated under both *R.P.C.* 1.7 and *R.P.C.* 1.8(k)." *Id.* at 361.

## C.

Concluding that the inquiries before it involved an impermissible conflict of interest under *R.P.C.* 1.7, the Advisory Committee

---

*Ethics* 360 (describing Pollock Commission's comment as a "curious statement" that "is best understood narrowly and not as an invitation to exactly the type of abuse that prompted the pervasive criticism of the doctrine in the first place.").

[6] We did not adopt in full the version of *R.P.C.* 1.8(k) proposed by the Pollock Commission; we rejected as unworkable a suggested final clause that would have barred multiple representation involving a public entity when it "would enable the lawyer to improperly influence the decision of a government agency or public official responsible for a decision in the matter[.]" *Ibid.* We "note[d], however, that individual public agencies may impose additional requirements on its lawyers that are specific to the functions of the entity." *Id.* at 1146.

explained that it did "not need to reach" the question whether
*R.P.C.* 1.8(k) applied. *Opinion 697, supra,* 181 *N.J.L.J.* 536 n. 4,
14 *N.J.L.* 1563 n. 4. Because we do not agree that the inquiries
presented constitute a conflict of interest prohibited by *R.P.C.* 1.7,
more was required. We address first whether a conflict of
interest under *R.P.C.* 1.7 is presented in these circumstances.

The Advisory Committee's conclusion that a conflict of interest
was present here is premised on its view of the interrelationship
between and among members of the "municipal family." That is,
according to the Advisory Committee, if an "agency is subject to
the municipal government's budgetary, membership, or decision-
making control[,]" *Opinion 697, supra,* 181 *N.J.L.J.* 536, 14 *N.J.L.*
1563, then a conflict of interest arises if an attorney employed in
any capacity by the subsidiary agency seeks to appear before any
other agency part of that "municipal family." Yet, each and every
authority relied on by the Advisory Committee both pre-dates the
2004 amendments to the *Rules of Professional Conduct* and is
founded on the bedrock of the now-jettisoned "appearance of
impropriety" doctrine. Thus, in *In the Matter of the Advisory
Comm. on Prof'l Ethics Opinion 621,* 128 *N.J.* 577, 594–95, 608
*A.*2d 880 (1992), this Court explained that

> [t]he [appearance of impropriety] doctrine is most often applied in the municipal
> context: a municipal attorney, an attorney who is a member of the governing body,
> an attorney for the board of adjustment, or a municipal prosecutor are all regarded
> as part of the official municipal family, and none may, as attorney, represent a
> private client before any board, agency, commission, or other part of the municipal-
> ity, including its governing body.
>
> [(citation omitted).]

Based on the prohibition against the appearance of impropriety
and in the context of the "municipal family doctrine," the Advisory
Committee has consistently barred the concurrent multiple repre-
sentation of public entities and private parties. *See Opinion 374,*
100 *N.J.L.J.* 646 (July 21, 1977) (environmental commission mem-
ber barred from appearing for private clients before that munici-
pality's municipal court and agencies); *Opinion 292,* 97 *N.J.L.J.*
809 (Oct. 17, 1974) (attorney for fire district barred from appear-
ing for private clients before the municipality's municipal court);

*Opinion 281,* 97 *N.J.L.J.* 362 (May 16, 1974) (senior citizen housing association attorney barred from appearing for private clients before that municipality's governing body and agencies); *Opinion 137,* 91 *N.J.L.J.* 797 (Dec. 12, 1968) (municipal attorney barred from filing workmen's compensation claim against municipality's board of education); *Opinion 123,* 91 *N.J.L.J.* 97 (Feb. 15, 1968) (redevelopment agency's attorney barred from appearing for private clients before that municipality's governing body or board of adjustment; tax sale foreclosure attorney barred from appearing for private clients before that municipality's governing body or agencies; and city sewer authority attorney barred from appearing for private clients before that municipality's governing body or agencies); *Opinion 98,* 89 *N.J.L.J.* 641 (Oct. 6, 1966) (inter-municipal sewer authority attorney barred from appearing for private clients before each participating municipality's governing body and agencies); *Opinion 79,* 88 *N.J.L.J.* 460 (July 15, 1965) (municipal housing authority attorney barred from appearing for private clients before that municipality's governing body, court and agencies); *Opinion 52,* 87 *N.J.L.J.* 610 (Sep. 24, 1964) (municipal parking authority attorney barred from appearing for private clients before that municipality's court and agencies); *Opinion 18,* 86 *N.J.L.J.* 734 (Dec. 26, 1963) (city housing authority attorneys barred from appearing for private clients before that municipality's governing body and agencies). *Compare Opinion 77,* 88 *N.J.L.J.* 453 (July 15, 1965) (attorney serving on *appointed* board of education barred from appearing for private clients before that municipality's court and agencies), *with Opinion 41,* 87 *N.J.L.J.* 285 (May 7, 1964) (*elected* board of education attorney permitted to appear for private clients before that municipality's governing body, court and agencies, and against the municipality in which school district is located).

## D.

The broad test of "whether the agency is subject to the municipal government's budgetary, membership, or decision-making control," while of some relevance, is no longer dispositive. Once the

"appearance of impropriety" doctrine ceases to apply, that test may or may not shed light on the question whether there is an actual conflict of interest prohibited by the *Rules of Professional Conduct*. We, therefore, do not abandon the "municipal family doctrine" in its entirety. Instead, because the 2004 amendments to the *Rules of Professional Conduct* make clear that multiple representation cases involving a public entity necessarily implicate both *R.P.C.* 1.7 *and R.P.C.* 1.8(k), the elimination of the "appearance of impropriety" doctrine requires that we re-examine and limit the scope of the "municipal family doctrine" to the contours of *R.P.C.* 1.8(k).

*R.P.C.* 1.8(k) requires that, in addition to vaulting the requirements of *R.P.C.* 1.7, a lawyer employed or retained by a public entity "shall not undertake the representation of another client if the representation presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client." At first blush, the considerations relevant for *R.P.C.* 1.8(k) analysis appear divorced from those that animate the "municipal family doctrine." However, we retain the "municipal family doctrine" but restricted to the relevant municipal governing body and its subordinate entities. We hold that, as so restricted, "membership" in the "municipal family" establishes a *per se* "substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client" and, therefore, a *per se* proscribed conflict of interest.

Thus, if an attorney plenarily represents a municipal governing body, that attorney will be barred from representing private clients before that governmental entity's governing body and all of its subsidiary boards and agencies, including its courts. If an attorney plenarily represents an agency subsidiary to the governmental entity's governing body, that attorney will be barred from representing private clients before that subsidiary agency only.

For example, if an attorney is the solicitor to a municipality, that attorney and his or her law firm may not appear on behalf of private clients before that municipality's governing body, boards, agencies, or municipal court. If an attorney is the solicitor to a municipality's zoning board of adjustment, the attorney and his or her law firm are barred from representing private clients only before the zoning board of adjustment, and may represent private clients before that municipality's governing bodies as well as its other boards, agencies or municipal court. We caution that, in those instances when the jurisdiction of the agency, board, or court in question implicates matters within the substantially similar jurisdiction of another agency, board, or court within the same governing body, that fact remains relevant in the application of *R.P.C.* 1.8(k). Thus, by way of illustration, concurrent representation of a municipality's zoning board of adjustment and planning board—or the concurrent representation of one such public board and private clients before a closely related board—is a relevant factor in determining whether a conflict of interest arises such that it "presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client." *R.P.C.* 1.8(k).

E.

Our holdings in respect of the proper analysis to be undertaken in determining whether a multiple representation involving a public entity constitutes a conflict of interest do not squarely respond to the inquiries presented by appellant. In appellant's view, limited scope attorney engagements by a governmental entity's governing body should bar that attorney from appearing on behalf of private clients before that governmental entity's governing body only, and should not *per se* bar that attorney from appearing on behalf of private clients before that governmental entity's subsidiary boards, agencies and courts. We agree.

Therefore, in response to appellant's first inquiry and consistent with *R.P.C.* 1.8(k), we hold that a law firm is not *per se* precluded from serving simultaneously as bond counsel for the governing body of a municipality and representing a private client before one of the boards, agencies, or municipal court of the municipality. Similarly, in response to appellant's second inquiry and consonant with *R.P.C.* 1.8(k), we hold that a law firm is not *per se* precluded from serving simultaneously as special litigation counsel for the governing body of a municipality and representing a private client before one of the boards, agencies, or municipal court of the municipality.

These holdings, however, are limited. We hold only that neither instance inquired of by appellant presents a *per se* conflict of interest. Nothing in these holdings is to be construed to relieve any attorney of the discrete obligations *R.P.C.* 1.8(k) imposes. Thus, although not *per se* barred, any attorney who is employed by or represents a public entity in any capacity and at any level must nevertheless comply with *R.P.C.* 1.8(k) *before* engaging in the representation of a private client before a governmental body, board, agency or court other than the governmental entity which employed or retained that attorney or its subsidiary boards, agencies, or courts. That is, the attorney must determine whether the representation of a private client will "present[ ] a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client." In the end, it is that standard that must control.

## V.

For the foregoing reasons, we hold that the "appearance of impropriety" standard no longer retains any continued validity in respect of attorney discipline. We further hold that the provisions of *R.P.C.* 1.8(k) govern all instances in which a lawyer or a law firm employed or retained by a public entity, either as a lawyer or in some other capacity, seeks to undertake the representation of

another client before that public entity or its board or agencies, including, if applicable, its municipal court. In respect of the application of *R.P.C.* 1.8(k), we reaffirm the continuing vitality of the "municipal family doctrine," albeit in a less expansive scope.

We therefore reverse *Opinion 697.* We specifically hold that if an attorney plenarily represents a municipal governing body, that attorney will be barred from representing private clients before that governmental entity's governing body and all of its subsidiary boards and agencies, including its courts. If, however, an attorney plenarily represents an agency subsidiary to the governmental entity's governing body, that attorney will be barred from representing private clients before that subsidiary agency only. Finally, if the scope of an attorney's engagement by a governmental entity is limited and not plenary, that attorney and his or her law firm are exempt from the strictures of the now-circumscribed "municipal family doctrine," but, in any event, the scope of the engagement remains relevant in determining whether the proscriptions of *R.P.C.* 1.8(k) have been observed.

*For reversal*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, WALLACE and RIVERA–SOTO—5.

Opposed—None.