**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2724-17T3

DAVID BURKHARDT,

      Plaintiff-Respondent,

   v.

ERICA KASTELL, f/k/a ERICA
BURKHARDT,

      Defendant-Appellant.

_____

      Argued May 30, 2018 — Decided June 8, 2018

      Before Judges Fisher and Moynihan.

      On appeal from Superior Court of New Jersey,
      Chancery Division, Family Part, Somerset
      County, Docket No. FM-18-0231-12.

      Andrew M. Shaw argued the cause for appellant
      (The DeTommaso Law Group, LLC, attorneys;
      Andrew M. Shaw, on the brief).

      Joanna R. Adu argued the cause for respondent
      (Lyons & Associates, PC, attorneys; William
      P. Lemega and Joanna R. Adu, on the brief).

PER CURIAM

    We granted leave to appeal an order that disqualified The

DeTommaso Law Group (the firm) from further acting as counsel for

defendant Erica Kastell because an attorney, who mediated an earlier dispute in this post-judgment matrimonial matter, later became affiliated with the firm. We reverse because the order under review was based on considerations — the appearance of impropriety and plaintiff David Burkhardt's "discomfort" — that are not expressed in RPC 1.12.

We briefly describe the events giving rise to this dispute. The parties' 1996 marriage, which produced three children, was dissolved by a judgment that incorporated the parties' 2011 marital settlement agreement (MSA). In February 2016, they entered into a post-judgment consent order that modified the MSA's parenting time provisions; the firm represented Erica during that proceeding. The parties, however, disputed certain financial issues generated by the parenting-time adjustment; these disputes were referred to James Maloughney, Esq., a solo practitioner, for mediation. According to David,

> [t]he mediation process took over two months, with countless discussions, emails and telephone calls between both parties and Mr. Maloughney, as well as an approximate three (3) hour mediation session at Mr. Moloughney's office [in] Somerville . . . . In addition to these communications, there was considerable documentation exchanged and provided to Mr. Moloughney, who was privy to all of my information and documentation as it pertained our ongoing disputes. As a disinterested third party serving as mediator, Mr. Moloughney was given access to my personal and confidential

> information, business records and personal files.

What David described as "lengthy back and forth discussions" resulted in an April 28, 2016 consent order, which recalibrated David's child-support obligation and modified other financial matters.

More than eighteen months later, a firm attorney wrote to David's attorney to suggest mediation of a number of issues, including child support. To the latter's surprise, his letterhead revealed that Moloughney was "of counsel" to the firm. This prompted a demand that the firm cease representing Erica. When the firm refused, David promptly — and successfully — moved for the firm's disqualification.

We granted Erica's motion for leave to appeal so we might consider whether her due process rights were damaged by depriving her of her chosen attorney and whether the motion judge erroneously applied RPC 1.12. We agree that the judge erred in disqualifying the firm and reverse.

RPC 1.12 governs this circumstance. Subsection (a) declares that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a . . . mediator . . ., unless all parties to the proceeding have given consent, confirmed in writing." Without

doubt, Moloughney, who mediated an earlier dispute between these parties, could not represent Erica without David's consent, and there is no doubt consent was not given. That, however, does not end the matter.

The pressing question is not whether Moloughney may represent Erica — he may not — but whether the firm's other attorneys may represent her now that Moloughney is affiliated with the firm. RPC 1.12(b) declares that upon disqualification of a firm attorney — here, Moloughney — "no lawyer in [that firm] may knowingly undertake or continue representation in the matter unless":

> (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (2) written notice is promptly given[1] to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

These conditions were met. Moloughney's relationship with the firm was known to David and his attorney. And the firm and Moloughney represented that the latter would be screened from any participation or involvement in the matter.

---

[1] This prompt-notice requirement has no bearing here. It may be true that the firm did not immediately advise David's attorney of Moloughney's affiliation with the firm when or as it occurred, but there was then no pending matter between the parties. Once a dispute later arose between these post-judgment matrimonial litigants, David immediately learned of Moloughney's affiliation because of what counsel's letterhead revealed.

These facts were not disputed, and the judge recognized that these elements for the firm's continued representation of Erica were firmly in place. He observed in his oral decision that "if the [c]ourt was to strictly . . . follow the letter of the RPC, . . . [Erica's] argument might be prevailing." But, the judge nevertheless disqualified the firm because Moloughney was the parties' former mediator, because the mediation was recent (eighteen months earlier), and because of a "psychological . . . component," which the judge described in the following way:

> When you're working with individuals in a mediator capacity . . . you get to know how that person ticks. You know where their weak spots are, where their anger spots are, where their strong parts and strengths [are]. . . . You have . . . the inside skinny. [There is] a significant advantage with regard to the knowing and the doing and how you go forward.

The judge also expressed concern about how the public might view the firm's continued involvement.

As noted, the firm represented that Moloughney would not share any information he possessed — that he was and would remain walled off from these proceedings. The judge recognized that, while this was undoubtedly true, such a wall "doesn't give [David] a comfort level." Consequently, the judge concluded that this discomfort and the fact that, in the judge's view, a "reasonably objective person in the public realm" would not look with favor

A-2724-17T3

on the firm's continued representation of Erica, warranted disqualification.

We reject the judge's thoughtful but mistaken analysis. The "appearance of impropriety" concept has been discarded. In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697, 188 N.J. 549, 568 (2006). And a party's "discomfort" in an adversary's retention of a particular attorney was not pronounced in RPC 1.12 as a ground for disqualification. We must bear in mind that RPC 1.12 was not only crafted with a mind toward someone in David's position, but with the interests of someone in Erica's position as well. RPC 1.12 steers a course intended to protect both interests by insisting on the formation of a wall between the former mediator and the attorneys advocating on the client's behalf. All relevant concerns are fully vindicated by application of the rule's actual terms. The judge erred by applying additional terms not expressly authorized by rule.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6                                              A-2724-17T3