**Maureen BOVEE, et al. v. John C. GRAVEL, Esq., et al.**

[811 A.2d 137]

No. 01-347

August 13, 2002. Plaintiffs shareholders of Lyndonville Savings Bank & Trust Company appeal from a superior court judgment dismissing their complaint against defendants, the attorneys and law firms that represented the bank in a lawsuit against two of the plaintiffs, Evelyn and Roger Lussier. Plaintiffs contend the trial court erroneously: (1) ruled that they lack standing; (2) violated their constitutional rights to equal protection and due process; and (3) found facts contrary to the allegations in the complaint. We affirm.

This case is one of several resulting from the recent troubles of Lyndonville Savings Bank. In December 1993, plaintiff Roger Lussier was convicted in federal district court on a variety of criminal charges, including bank fraud, money laundering, and receipt of illegal commissions, committed during his tenure as the bank's president and chairman of the board. See *United States v. Lussier*, 71 F.3d 456 (2d Cir. 1995) (affirming conviction); *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997) (affirming district court's dismissal of post-judgment motion to rescind restitution order); *United States v. Lussier*, 219 F.3d 217 (2d Cir. 2000) (affirming district court's denial of motion for new trial based on newly discovered evidence). Lussier was sentenced to a prison term of forty-six months, a fine of $100,000, and ordered to pay restitution of over $426,000.

In September 1995, following Roger Lussier's conviction, the bank filed a civil suit in federal district court against Roger Lussier and his wife Evelyn, seeking immediate payment of the restitution award, damages based on Roger

Lussier's status as an officer and director of a bank in the Federal Reserve System, and recovery under several state law theories, including breach of fiduciary duty and fraudulent conveyance of certain bank shares to Evelyn Lussier. In February 1996, the district court dismissed Evelyn Lussier as a defendant based on her agreement with the bank to reverse the allegedly fraudulent conveyance by returning the stock to its pre-transfer status. In July 1997, the bank abandoned that portion of the complaint based on Roger Lussier's status as a federal bank officer because the bank was not a member of the Federal Reserve. Trial proceeded on the remaining claims, resulting in a judgment for the bank on the state law claims totaling over $8 million. The district court denied a subsequent motion to set aside the judgment for lack of subject matter jurisdiction, but the Second Circuit Court of Appeals reversed, holding that federal law did not entitle the bank to seek a separate civil judgment on the restitution award, and that — since the bank had abandoned its claim based on Federal Reserve membership — the district court lacked pendent jurisdiction over the state law claims. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 703-05 (2d Cir. 2000).

In June 2000, following dismissal of the federal action, the bank filed a new civil suit against Roger Lussier in Caledonia Superior Court, seeking, inter alia, an attachment of the bank shares transferred back to Roger as part of the agreement dismissing Evelyn Lussier from the federal action. The trial court granted Evelyn Lussier's motion to intervene in the new lawsuit, noting that her earlier agreement reversing the transfer of stock in return for her dismissal from the federal action was void due to the district court's lack of subject matter jurisdiction.

Shortly thereafter, plaintiffs — comprised of various bank shareholders in-

cluding Roger and Evelyn Lussier — filed this action against the attorneys and law firms that had represented the bank in the federal lawsuit against the Lussiers.* The complaint alleged that defendants had erroneously advised the bank concerning the adequacy of insurance coverage for defense costs and losses associated with the various lawsuits involving the bank; failed to advise the bank to prosecute bad faith actions against its various insurance companies; and filed the federal lawsuit against Roger and Evelyn Lussier knowing that there was no reasonable basis for the assertion of federal jurisdiction or the fraudulent conveyance claim. Based on these allegations, the complaint stated a single cause of action for negligence, asserting that "a reasonably prudent attorney" in defendants' circumstances would have investigated whether: (1) there was a reasonable factual basis in the federal suit for the assertion of federal jurisdiction; (2) there was a reasonable factual basis for the fraudulent conveyance claim; (3) there was a conflict of interest in defendants' filing the state court action against Roger Lussier; (4) there was a reasonable basis for reissuing the disputed stock in Roger Lussier's name alone without regard to the property interests of Evelyn Lussier; and (5) plaintiffs were entitled to information concerning the costs incurred in prosecuting the civil actions against Roger Lussier.

---

* Plaintiffs also filed a separate superior court action against the bank and several of its officers and directors. Caledonia Superior Court, Docket No. 357-11-00CaCv. The trial court granted the defendants' motion to dismiss based on plaintiffs' lack of standing to bring a direct action against the corporation. Plaintiffs have filed a separate appeal in that matter. Supreme Court Docket No. 2001-346.

Defendants moved to dismiss the complaint, asserting that they had no attorney-client relationship with plaintiffs, and that plaintiffs therefore lacked standing to bring an action for professional malpractice based on their representation of the bank. The trial court agreed, granted the motion to dismiss, and entered judgment for defendants. Plaintiffs' subsequent motion for reconsideration was denied. This appeal followed.

The longstanding common law rule is that an attorney owes a duty of care only to the client, not to third parties who claim to have been damaged by the attorney's negligent representation. See *Savings Bank v. Ward*, 100 U.S. 195, 200 (1879) ("Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party . . . ."); *Clagett v. Dacy*, 420 A.2d 1285, 1287 (Md. Ct. Spec. App. 1980) ("The traditional rule, in Maryland and elsewhere, is that an attorney's duty of diligence and care flows only to his direct client/employer, and that, whether in an action of contract or tort, only that client/employer can recover against him for a breach of that duty."); see generally Annot., *Attorney's Liability to One Other Than Immediate Client, for Negligence in Connection With Legal Duties*, 61 A.L.R.4th 615, 624 (1988) (collecting cases).

Because in Vermont, as elsewhere, a corporation is a legal entity distinct from its shareholders, *Jack C. Keir, Inc. v. Robinson & Keir P'ship*, 151 Vt. 358, 360, 560 A.2d 957, 958 (1989), it is also the general rule that an attorney representing a corporation owes a duty of care solely to the corporation, not to its separate shareholders, officers or directors. See, e.g., *Delta Automatic Sys., Inc. v. Bingham*, 974 P.2d 1174, 1178 (N.M. Ct. App. 1998) (in representing corporation, attorneys "did not owe [shareholders] any special duty above and beyond their duties to the corporation"); *In re Banks*, 584 P.2d 284, 289 (Or. 1978) (corporate

attorney's "duty of loyalty is to the corporation and not to its officers, directors or any particular group of shareholders"); *Bowen v. Smith*, 838 P.2d 186, 189 (Wyo. 1992) (representation of corporation did not create attorney-client relationship with shareholders); see generally 3 R. Mallen & J. Smith, Legal Malpractice § 25.9, at 771-74 (5th ed. 2000) (discussing rule that only corporation may sue attorney for professional negligence).

The requirement of attorney-client privity to maintain a malpractice action "ensure[s] that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *Barcelo v. Elliott*, 923 S.W.2d 575, 578-79 (Tex. 1996); see also *Orr v. Shepard*, 524 N.E.2d 1105, 1108 (Ill. App. Ct. 1988) ("Public policy mandates that when an attorney acts in his professional capacity, he must be free to advise his client without fear of personal liability to third persons and nonclients if the advice later proves to be incorrect."); *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978) ("abandonment of the privity requirement would place a potentially unlimited burden on lawyers"); see generally Comment, *Limits on the Privity and Assignment of Legal Malpractice Claims*, 59 U. Chi. L. Rev. 1533, 1539 (1992) (discussing interests in maintaining and relaxing privity requirement). In the corporate context, the privity rule serves to focus the attorney on the corporate client's interests, rather than the diverse needs and interests of the corporate shareholders, and avoids potentially unlimited liability to dissenting shareholders. See *Gamboa v. Shaw*, 956 S.W.2d 662, 665 (Tex. App. 1997) ("deviation [from privity requirement] would result in attorneys owing a duty to each shareholder of any corporation they represent," leading to "almost unlimited liability").

To be sure, a number of courts have relaxed the privity rule in limited circumstances — most often in the estate-planning context — where it can be shown that the client's purpose in retaining the attorney was to directly benefit a third party. See, e.g., *Lucas v. Hamm*, 364 P.2d 685, 687-88 (Cal. 1961) (intended beneficiaries of will who lost testamentary rights because of attorney negligence may recover against attorney as third-party beneficiaries); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 128 Cal. Rptr. 901, 905-06 (Ct. App. 1976) (law firm may be liable to third-party lender for negligent misrepresentation where firm knew that misrepresentations would be used to obtain loan); *Stowe v. Smith*, 441 A.2d 81, 83 (Conn. 1981) (nonclient plaintiff had standing to sue attorney who contravened testator's instructions to leave plaintiff the principal of testamentary trust); *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982) ("to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship"); *Flaherty v. Weinberg*, 492 A.2d 618, 625 (Md. 1985) (recognizing third-party beneficiary theory as "sole exception" to "strict privity rule"); see generally Comment, *supra*, 59 U. Chi. L. Rev. at 1536 (noting that most states that have lowered privity bar demand that nonclients be intended third-party beneficiaries in order to enjoy standing to sue).

Courts have generally refused, however, to recognize an exception to the privity requirement for shareholders' claims against a corporate attorney. See *McLachlan v. Simon*, 31 F. Supp. 2d 731, 741 (N.D. Cal. 1998) (attorney for company's independent trustees owed no duty to shareholders of stock fund merely because attorney's "advice might affect the shareholders"); *Goerlich v. Courtney Indus., Inc.*, 581 A.2d 825, 828

(Md. Ct. Spec. App. 1990) (declining to recognize shareholder's action against corporate attorney, noting that to hold otherwise would expose attorney to potentially "endless litigation") (internal citations omitted); *Holmes v. Winners Entm't, Inc.*, 531 N.W.2d 502, 505 (Minn. Ct. App. 1995) (refusing to recognize privity exception to shareholder's malpractice claim against attorneys retained by corporation); *Gamboa v. Shaw*, 956 S.W.2d at 665 (declining to deviate from privity requirement to allow shareholders' action against corporate attorneys).

Although a few courts have evinced a willingness to recognize an attorney's duty of care to the shareholders of a closely held corporation, these decisions are generally based on circumstances demonstrating a relationship between the attorney and a small number of shareholders approaching that of privity. See, e.g., *United States v. Edwards*, 39 F. Supp. 2d 716, 731-32 (M.D. La. 1999) ("The issue of attorney-client relationship becomes more complicated in the case of a small closely-held corporation with only a few shareholders or directors. In such cases, the line between individual and corporate representation can become blurred."); *Rosman v. Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987) (counsel for closely held corporation consisting of two fifty-percent shareholders represented both corporate entity and individual shareholders).

Many courts, however, have refused to recognize a duty to nonclient shareholders even in such closely held corporations. See *Skarbrevik v. Cohen, England & Whitfield*, 282 Cal. Rptr. 627, 634-36 (Ct. App. 1991) (counsel for close corporation owed no duty to nonclient shareholder); *Brennan v. Ruffner*, 640 So. 2d 143, 145-46 (Fla. Dist. Ct. App. 1994) ("where an attorney represents a closely held corporation, the attorney is not in privity with and therefore owes no separate duty of diligence and care to an individual shareholder"); *Felty v. Hart-*

*weg*, 523 N.E.2d 555, 557 (Ill. App. Ct. 1988) (declining to recognize corporate attorney's duty to shareholders, court observed that "[e]ven in closely held corporations, minority shareholders often have conflicting interests with the corporation").

Plaintiffs here have not alleged that the bank's corporate entity was a mere formality indistinguishable from themselves as shareholders such that defendants owed them a direct duty of care. Nor have they alleged any factual or legal basis for holding defendants liable under a third-party beneficiary theory. Their negligence claim is essentially that defendants rendered inadequate counsel resulting in a variety of detriments to the bank's interests, including the failure to pursue meritorious bad faith claims and the filing of an unmeritorious federal action. Any detriment to the interests of the shareholders, or the value of their stock, was derivative of actions pursued on behalf of the bank, not plaintiffs. Accordingly, we conclude that the claim was properly dismissed.

In their briefs and at oral argument, plaintiffs attempted belatedly to assert a claim for negligent misrepresentation. Although such a claim was not stated in the complaint, plaintiffs argued that it was fairly raised by the factual allegations. A number of courts have held that a cause of action for negligent misrepresentation does not necessarily require an attorney-client relationship. See, e.g., *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 894 F. Supp. 777, 789 (D. Vt. 1995); *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995); *Petrillo v. Bachenberg*, 655 A.2d 1354, 1359-60 (N.J. 1995); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792-95 (Tex. 1999). The cases emphasize, however, that the circumstances must demonstrate a relationship " 'so close as to approach that of privity.' " *Petrillo*, 655 A.2d at 1358

(quoting *Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood,* 605 N.E.2d 318, 320 (N.Y. 1992)). Typically, courts have allowed such claims where the client solicited an opinion letter from the attorney for the express purpose of inducing reliance by a third party, and the attorney was aware that the third party would rely and intended to induce such reliance. See, e.g., *Roberts,* 128 Cal. Rptr. at 905-06 (law firm may be liable to third party lender for negligent misrepresentation in furnishing letter with misleading information to client, knowing that letter would be used to obtain loan); *Mehaffy,* 892 P.2d at 236-37 (opinion letter that firm prepared on behalf of client for express purpose of inducing nonclient to purchase municipal bonds may be liable for negligent misrepresentation); *Kirkland Constr. Co. v. James,* 658 N.E.2d 699, 701-02 (Mass. App. Ct. 1995) (buyer may state claim for negligent misrepresentation against law firm that wrote letter with intent to induce buyer to enter into contract with client). Plaintiffs here have not alleged facts establishing a relationship of this nature with defendants. Accordingly, we discern no grounds to reverse the judgment on this basis.

Plaintiffs also assert that the court violated their constitutional rights of association, equal protection, and due process by rejecting their claim based on their association with two of the plaintiffs, Evelyn and Roger Lussier, who were adverse parties to defendants' client in the federal lawsuit. We conclude that the language in the trial court decision on which plaintiffs rely raises additional reasons why Evelyn and Roger Lussier could not prevail in this action, rather than penalizing the remaining plaintiffs for association with the Lussiers. In any event, the court clearly rejected the claim on lack of duty and standing, not on the fact that the Lussiers were adverse parties to the corporation in the federal suit.

Finally, plaintiffs contend the court erred in finding certain facts not alleged in the complaint in granting the motion to dismiss. The claim finds no support in the record, which — as noted — shows that the court's decision was fundamentally grounded on plaintiffs' failure to allege facts sufficient to establish a duty owed by defendants.

*Affirmed.*