2011 VT 134

## Joshua Handverger v. City of Winooski and William O'Brien, Esq.

[38 A.3d 1158]

No. 11-028

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 15, 2011

*John L. Franco, Jr.*, Burlington, for Plaintiff-Appellant.

*Christopher D. Ekman* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Defendant-Appellee O'Brien.

¶ 1. **Burgess, J.** Plaintiff, the former city manager of Winooski, appeals from the trial court's summary judgment in favor of the Winooski city attorney. Plaintiff sued the city attorney, individually, for breach of fiduciary duty in the course of municipal infighting over plaintiff's performance as manager and the city's decision to dismiss him. Plaintiff's complaint is that contrary to the fealty owed him by the city attorney, the attorney embarrassed and humiliated him by threatening cross-examination at a municipal hearing concerning his suspension of the city's police chief, and by signing a disparaging letter and press release calling

for his resignation. Plaintiff claims compensation for personal anguish, humiliation, embarrassment, and nightmares resulting from the city attorney's actions. The trial court determined that the city attorney owed plaintiff no fiduciary duty beyond the attorney's duty to the city. We affirm.

¶ 2. The trial court found the following facts, except where otherwise noted. The city hired plaintiff as manager in 2007, when the city attorney was already in office. Plaintiff and the city attorney clashed over plaintiff's second suspension of the chief of police in 2008, which led to a city council hearing on the chief's status. Plaintiff retained independent counsel for the proceedings. The city attorney represented and advised the city council during the hearing, cross-examined witnesses, and stated an intention to cross-examine plaintiff, although he did not do so. Plaintiff later described this public declaration as humiliating, and in his deposition expressed an impression that the city attorney's questioning of other witnesses reflected confidential conversations between him and the city attorney in breach of the attorney's fiduciary duty to him.

¶ 3. Relations between plaintiff and the city attorney deteriorated. The attorney was one of eighteen city employees who signed a letter criticizing plaintiff's leadership and calling for him to resign. The city attorney also signed a press release saying that if plaintiff did not resign, the letter would be presented to the city council. Plaintiff did not resign, and the letter was presented at the next council meeting. In his deposition, plaintiff expressed his belief that the purpose of the letter was to cause him public humiliation and embarrassment. At the meeting, the council voted to place plaintiff on paid administrative leave and remove him from office, effective eight days later. Ultimately, plaintiff was terminated. After being fired, plaintiff sued the city for wrongful dismissal and filed this action against the city attorney personally for breach of fiduciary duty.[*]

¶ 4. Plaintiff maintained that, during the course of his employment, the city attorney implied that he represented plaintiff "as manager" and acted as plaintiff's "attorney of the administration." Plaintiff could not, however, refer to any expression to that effect.

---

[*] Partial summary judgment was issued on the claims against the city. On appeal, this Court upheld the partial summary judgment in *Handverger v. City of Winooski*, 2011 VT 130, 191 Vt. 556, 38 A.3d 1153 (mem.). Plaintiff's claims against the city are not relevant to this appeal.

The court found, and it is not disputed, that the city attorney never said he and plaintiff had an attorney-client relationship.

¶ 5. Alternatively, plaintiff relied on the text of the city charter to establish a fiduciary duty running from the attorney to himself. The Winooski City Charter defines the city attorney's role as follows:

> There shall be a legal officer of the city, known as the city attorney appointed by the city manager as provided in this charter who shall serve as chief legal advisor to the council, the city manager and all city departments, offices and agencies, and shall perform any other legal duties prescribed in this charter or by ordinance.

24 V.S.A. Appendix chapter 17, § 4.4. Treating this provision as obliging the city attorney to represent the municipality only, the court found no fiduciary duty running to plaintiff. See *In re Advisory Comm. on Prof'l Ethics, Docket No. 18-98*, 745 A.2d 497, 501 (N.J. 2000) (explaining that when "the municipal attorney counsels the municipal administrator, he or she is really giving legal advice to the municipality itself").

¶ 6. Plaintiff also contended that, absent an attorney-client relationship, a fiduciary duty still arose from the nature of dealings between him and the city attorney. In support, plaintiff cited a number of cases recognizing an actionable fiduciary duty arising from privity relationships aside from an attorney-client relationship. Acknowledging the case law, the court nevertheless found no analogous privity under the facts presented here.

¶ 7. We review summary judgment de novo. The same standard employed by the trial court applies here. *Nordlund v. Van Nostrand*, 2011 VT 79, ¶ 9, 190 Vt. 188, 27 A.3d 340. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3).

■ ■ ¶ 8. The trial court was correct in construing the city charter as obligating the city attorney to represent the city's interests only. Though the charter designates the city attorney as legal advisor to the city manager, it is settled in Vermont and other states that the actual client of the city attorney is the

municipality. The Vermont Rules of Professional Conduct provide that a "lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." V.R.Pr.C. 1.13(a). An organization's lawyer, such as a city attorney or corporate counsel, works only for its constituents, including its employees and officials, in order to serve the organization, not to serve those individuals personally. See *Bovee v. Gravel*, 174 Vt. 486, 487, 811 A.2d 137, 140 (2002) (mem.) (affirming "the general rule that an attorney representing a corporation owes a duty of care solely to the corporation, not to its separate shareholders, officers or directors"); see also V.R.Pr.C. 1.13 cmt. 9 (applying rule to government lawyers).

■ ¶ 9. Similarly, other jurisdictions confirm that a municipal attorney is not in a personal attorney-client relationship with municipal staff. See *Salt Lake Cnty. Comm'n v. Salt Lake Cnty. Attorney*, 1999 UT 73, ¶¶ 16-17, 985 P.2d 899 (interpreting Rule 1.13 to mean that where attorney is by statute "legal adviser of the county" he or she represents county not county commissioners individually). This is so even when the enabling law charges the lawyer to "represent" municipal officers. *Ward v. Superior Court*, 138 Cal. Rptr. 532, 537 (Ct. App. 1977) (explaining that county counsel's only client was county despite county charter's requirement that county counsel represent county officers acting in their official capacity). By extension, the Winooski city attorney had no fiduciary duty to any city official separate from his duty to the city.

■ ¶ 10. In any event, there were neither findings nor evidence that the city attorney, implicitly or explicitly, represented plaintiff individually or in any capacity other than as city manager. Moreover, there was no evidence that the city attorney undertook, as a private lawyer, to represent plaintiff. Lacking any lawyer-client relationship, or any other relationship evident between the parties in their private capacities, it cannot follow that the city attorney owed plaintiff a duty of faithful conduct for the personal benefit of plaintiff, as claimed.

■ ¶ 11. We next consider plaintiff's argument that notwithstanding a lack of attorney-client status, a fiduciary duty existed by operation of law due to the parties' dealings. There does arise a fiduciary relationship when one person " 'is under a duty to act for or to give advice for the benefit of another upon matters

within the scope of the relation.' " *Cooper v. Cooper*, 173 Vt. 1, 7, 783 A.2d 430, 436 (2001) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)). Although plaintiff raises this as a distinct argument, the essential question is still whether the city attorney was obligated "to act for or give advice for the benefit" of plaintiff personally either as an ally, or a neutral, in the plaintiff's employment dispute with the city. Absent any language to that effect in the charter, or some evidence that the attorney otherwise entered upon such a role on behalf of plaintiff, the answer remains no.

¶ 12. In *Bovee*, cited by plaintiff, we acknowledged relaxation in some jurisdictions of the strict attorney-client privity basis for legal malpractice where injured third parties could show the "client's purpose in retaining the attorney was to directly benefit a third party." 174 Vt. at 488, 811 A.2d at 140. This Court declined to extend such standing to bank shareholders seeking damages from corporate counsel for malpractice in prosecuting an earlier civil claim on behalf of the bank against the shareholders. See *id.* at 487-89, 811 A.2d at 139-42. We recognized, however, that "a few courts have evinced a willingness to recognize an attorney's duty of care to the shareholders of a closely held corporation . . . based on circumstances demonstrating a relationship between the attorney and a small number of shareholders approaching that of privity." *Id.* at 489, 811 A.2d at 141. They did so, we explained, because in closely held corporations "the line between individual and corporate representation can become blurred." *United States v. Edwards*, 39 F. Supp. 2d 716, 731-32 (M.D. La. 1999) (cited in *Bovee*). Plaintiff presents nothing approaching such a relationship of privity between himself and the city attorney. There is no evidence that the attorney was appointed or retained to serve plaintiff's personal interests. Nor is there evidence of surrounding circumstances, or interaction between the parties, suggesting a blurring of municipal objectives with plaintiff's own.

¶ 13. Plaintiff also urges that we follow several decisions recognizing a fiduciary duty arising between parties in a relationship of agency or co-ownership of property. Contending that his situation with the city attorney was analogous, plaintiff posits that the city attorney breached his trust by participating in the effort to force his resignation and then humiliating him when he did not. We disagree, seeing no actionable fiduciary relationship arising between the city's attorney and plaintiff personally.

¶ 14. Plaintiff's reliance on *Cooper v. Cooper*, 173 Vt. 1, 783 A.2d 430 (2001), is misplaced. In *Cooper*, the Court identified a fiduciary relationship between co-tenants of land. *Id.* at 7, 783 A.2d at 436. We explained that:

> By reason of the common interest that arises from co-ownership, a relationship of mutual trust with respect to the common estate is created. From that close relationship follows a duty on each co-tenant to protect the common title and a duty not to directly or indirectly assault the interest of any one owner.

*Id.* Here, no such common and mutually dependent interest appears between the city attorney and plaintiff beyond the attorney's ordinary obligation to represent the municipality.

¶ 15. Similarly, *Carr v. Peerless Insurance Co.*, 168 Vt. 465, 724 A.2d 454 (1998), is inapposite. In *Carr*, a finance company agreed to pay the plaintiff's annual business liability insurance premium in return for the plaintiff's timely installment payments, while the finance company also reserved power-of-attorney (POA) to terminate coverage in the event of the plaintiff's nonpayment. The company cancelled the plaintiff's insurance after he failed to make a monthly payment, and the plaintiff sued the company when the insurer refused to defend or indemnify him against a subsequent negligence claim. In terminating the policy, the company failed to comply with the statutorily required notice-of-cancellation-to-insured. *Id.* at 467, 724 A.2d at 456. This Court held that the POA agreement between the plaintiff and the finance company created a principal-agent relationship, resulting in a fiduciary duty on the part of the agent and the company, to act "in accordance with the principal's manifestation of consent" as set forth in the POA. *Id.* at 475, 724 A.2d at 460 (quoting Restatement (Second) of Agency § 383 (1958)). In turn, the POA called for the company "to do all things necessary to effect cancellation," including complying with the notice statute. *Id.* at 467, 724 A.2d at 455. Here, in contrast, plaintiff points to neither acts of agency by the city attorney nor any agreement giving rise to an agency relationship between them beyond the attorney's and plaintiff's shared obligation to act for the benefit of the city.

¶ 16. Plaintiff is no more persuasive in contending that *Perillo v. Advisory Committee on Professional Ethics*, 416 A.2d 801 (N.J. 1980), establishes that a municipal attorney has a fiduciary duty to

avoid acting against the interests of city employees. In *Perillo,* the New Jersey Supreme Court held that an attorney likely to have worked in a confidential capacity with a city employee was barred from representing the city in administrative or judicial proceedings against the same employee. *Id.* at 803. *Perillo* did not address the issue of fiduciary duty, and its primary rationale is irrelevant to determine whether such duty was owed to the municipal employee. Rather, the lawyer's disqualification was "based substantially upon the *appearance* of ethical impropriety." *Id.* (emphasis added). The court explained that a municipal lawyer's close working relationship with a police officer could "understandably foster the public belief that, in an adversary prosecution of a municipal police officer by a municipal attorney, there might well be an actual or subconscious temptation for the attorney to compromise the public interest." *Id.* at 806. The *Perillo* holding implicates no fiduciary duty to the officer and thus does not apply here.

*Affirmed.*