2015 VT 61

## B & C Management Vermont, Inc. v. Stephen R. John, Wynetta E. John, Stephen R. John as Executor of Estate of Amelia M. John, Catherine John, Richard John, Stephanie Ringey, Michelle John and Cynthia Beck

[122 A.3d 511]

No. 14-224

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed April 10, 2015

*Peter M. Lawrence* of *Barr Sternberg Moss Lawrence & Silver, PC*, Bennington, for Plaintiff-Appellant.

*Richard C. Carroll* of *Potter Stewart, Jr. Law Offices, P.C.*, Brattleboro, for Defendants-Appellees.

¶ 1. **Skoglund, J.** Tenant appeals the court's order granting summary judgment in favor of defendant landlords on the parties' dispute concerning a rental-increase provision of the lease. On appeal, tenant argues that the court erred in using extrinsic evidence to interpret a portion of the lease tenant believes is unambiguous, and in reaching an inequitable result. We affirm.

¶ 2. The basic facts are not disputed. Tenant is the successor lessee to a thirty-year lease on a commercial property in Brattleboro. The lease was executed in 1987. The lease established

a basic annual rent of $26,500 in paragraph 8, and then set forth how the rent would increase in subsequent years. The relevant portion of the lease on the annual increase is as follows:

### 9. INCREASED BASIC RENT DUE TO COST OF LIVING INCREASES

A. For the purposes of this Paragraph, the term "Price Index" shall mean the Consumer Price Index (C.P.I.-U) For All Urban Consumers With The Population Size Class D (Less than 75,000 in population) For The Northeast Region, or a successor or substitute index appropriately adjusted.

B. Tenant agrees that if the Price Index as of January 1, 1988 and on any subsequent January 1 of the remaining years of the terms of this Lease Agreement reflects an increase in the cost of living over and above such cost as reflected in the Price Index on January 1, 1987 (the "base index year"), an adjustment of the Basic Rent payable under Paragraph 8 shall be made based on the percentage difference. This shall be called "Increased Basic Rent." However, in no event shall any annual increase be more than four percent (4%) per year.

C. The percentage increase thus determined shall be multiplied by the Basic Rent payable by Tenant under Paragraph 8 and the aggregate of this sum and the Basic Rent set forth in Paragraph 8 shall represent "Increased Basic Rent" payable by Tenant in equal monthly installments during the remaining years of the terms of this Lease Agreement, including any option periods. The Basic Rent for purposes of this paragraph is Twenty-Six Thousand Five Hundred and no/100 Dollars ($26,500.00) NOT Thirteen Thousand Two Hundred Fifty and no/100 Dollars ($13,250.00).

. . . .

E. In computing any increases under this Paragraph 9 the Basic Rent shall at all times be deemed to be the Basic Rent set forth in Paragraph 9 and in no event shall any cost of living increases be computed on the Increased Basic Rent.

F. Under no circumstances shall the rent ever decrease or be less than the amount being paid at the time of any period of readjustment pursuant to this paragraph.

¶ 3. Pursuant to the rent-increase provision, each year landlords calculated the annual rent increase and sent a notice to tenant. The increase was calculated as the percentage change in the CPI from the previous year to the current year multiplied by the previous year's rent. This increase was then added to the prior year's rent to arrive at the new annual rent. In March 2007, tenant assumed the lease. From 2008 to 2012, landlords sent rent-increase notices and tenant paid rent annually adjusted for increases, calculated according to this method, without objection.

¶ 4. In 2013, landlords sent the annual rent increase notice to tenant. The notice reflected the new 2013 rent as $54,060. Tenant objected to the amount of rent and the calculation method for rental increases. The parties were unable to resolve their dispute, and tenant filed an action seeking both a declaration that its interpretation of the lease language was correct and damages for overpaid rent.

¶ 5. Tenant moved for summary judgment. Tenant claimed that the plain language of the lease agreement precluded landlords from using the increased basic rent to compute rental increases. Tenant alleged that the method of calculation was inconsistent with the language of the lease because the rent was calculated based on the increased basic rent and the lease agreement expressly states in paragraph 9E that "in no event shall any cost of living increase be computed on the Increased Basic Rent." Tenant claimed that the method for calculating the rent increases most consistent with the lease language was to calculate the difference between the CPI of the current year and the previous year, subject to the 4% cap, add that to the cumulative change in the CPI since 1987, and then multiply it by the basic rent. This increase would then be added to the basic rent. Using this method, for 2013, tenant calculated the rent as $45,819.83.

¶ 6. Landlords also moved for summary judgment. Landlords argued that the plain language of the lease agreement required calculating the rent increase in a different way. Landlords' method involved determining the percentage increase in the CPI between the current year and 1987, multiplying this by the basic rent of $26,500, and adding that to the basic rent. Landlords claimed that the 4% cap should apply to the annual increase in rent, not the

percentage change in the CPI. Using this method, landlords calculated the 2013 rent as $57,836. In the alternative, landlords argued that if the court determined the lease as ambiguous, the court should interpret the rent-increase provision based on the method of calculation used by the parties over the preceding years.

¶ 7. The trial court determined that the contract language describing the process for calculating annual rent increases was "highly ambiguous." The court explained that the main ambiguities were in paragraph 9B, which states that the adjustment in rent will be based on the percentage difference in the CPI, but does not specify whether the difference is calculated with respect to the prior year's index or the 1987 index. Further, the lease states that increases are limited to 4% without specifying which variable is subject to the cap — the year-to-year increase in CPI or the actual increase in rent.

¶ 8. In interpreting of the rent-increase provision, the court determined that the parties' apparent intent in establishing the rent-increase provision was two-fold: to account for inflation by incorporating the CPI, and also to limit annual rent increases by imposing a 4% cap. The court rejected both parties' interpretations of the lease language as inconsistent with at least one of these purposes. The court rejected landlords' assertion that the 4% cap was intended to be measured by comparing the current-year CPI with the 1987 CPI because this would result in an increase greater than 4% for every year after 1988 and therefore would simply increase rent by a set 4% each year, which would negate the language in the lease incorporating the annual CPI increase. The court further concluded, however, that applying the 4% cap to year-to-year increases in the percent CPI while using the calculation tenant offered would be inconsistent with the parties' intent because the increases would have little correspondence to actual inflation and would steadily diminish over the life of the lease.

¶ 9. Instead, the court looked to the parties' performance under the contract, and concluded that while the calculation employed by the parties during the life of the lease had departed from some language in the contract, it best reflected the parties' intention. The court further determined that this result was the most equitable. Therefore, the court granted summary judgment to landlords, and interpreted the lease provision to incorporate the calculation used by the parties during the prior years of the lease.

¶ 10. On appeal, tenant argues that only certain parts of the contract are ambiguous and that the court erred in using extrinsic evidence to change the effect of an unambiguous term. Tenant further asserts that the court's award of summary judgment to landlords is inequitable and results in a windfall to landlords.

¶ 11. ■■■ Our review of summary judgment is de novo. *Handverger v. City of Winooski*, 2011 VT 134, ¶ 7, 191 Vt. 84, 38 A.3d 1158. Judgment is appropriate if there are no disputed material facts and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). Here, there is no dispute as to the facts; the parties dispute the proper interpretation of their contract, which is a question of law that we review de novo. *Dep't of Corr. v. Matrix Health Sys., P.C.*, 2008 VT 32, ¶ 11, 183 Vt. 348, 950 A.2d 1201. A contract is interpreted foremost to give effect to the parties' intent, which is reflected in the contractual language, if that language is clear. *R&G Props., Inc. v. Column Fin., Inc.*, 2008 VT 113, ¶ 17, 184 Vt. 494, 968 A.2d 286. If the meaning of the contract is ambiguous, however, the issue then becomes a mixed question of law and fact. *Cate v. City of Burlington*, 2013 VT 64, ¶ 15, 194 Vt. 265, 79 A.3d 854. Extrinsic evidence may be used to aid in the interpretation of a contract if the contract terms are ambiguous. "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988).

¶ 12. ■■■ On appeal, tenant argues the contract is ambiguous, but only in part.[1] Tenant argues that while paragraph 9B is ambiguous and its interpretation should be guided by extrinsic evidence of the parties' intent, paragraph 9E is unambiguous and should be applied as written to preclude computing cost-of-living increases based on the increased basic rent.

---

[1] On appeal, landlords argue that the court erred in concluding that the lease was ambiguous. Landlords contend that the lease is unambiguous, and that the court should have adopted the rent-increase calculation put forward in their motion for summary judgment, which results in a higher rent. Landlords did not file a cross-appeal, and therefore they are precluded from seeking to change the court's order on appeal. See *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (explaining that appellee seeking to challenge trial court's order must file timely cross-appeal).

¶ 13. Tenant's argument is untenable. Paragraph E cannot be excised from the rest of the contractual language on the calculation of the rent increase because the contract "must be viewed in its entirety." See *id.* at 580, 556 A.2d at 85 (directing that contract be read, to extent possible, as "a harmonious whole"). When the rent-increase provision is viewed in its entirety and in light of the surrounding circumstances, we agree with the trial court that ambiguity is apparent. See *In re Estate of Price*, 2006 VT 62, ¶ 10, 180 Vt. 548, 904 A.2d 1196 (mem.) (reiterating that contract term does not exist in vacuum and must be assessed in light of surrounding circumstances and language of entire agreement); Restatement (Second) of Contracts § 212 cmt. b (1981) ("Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties."). The lease language contains inconsistencies about how the yearly increase should be computed — from the basic rent or the previous year's rent — and it is unclear how to apply the 4% cap. Therefore, to determine the correct meaning of the contract, the court properly considered extrinsic evidence of the parties' intent. One such indicator is the parties' conduct in performing under the contract.[2] See *Bissonnette v. Wylie*, 166 Vt. 364, 371-72, 693 A.2d 1050, 1055 (1997) (explaining that parties' understanding of agreement as reflected in their actions is relevant to interpreting ambiguous agreement); *Howard v. Maple Leaf Farm Assocs.*, 151 Vt. 555, 557, 563 A.2d 996, 997 (1989) (relying on parties' subsequent conduct to inform meaning of indefinite contract). Here, the parties' actions in performing under the contract are highly relevant. That evidence shows that both sides acquiesced for many

---

[2] Although the trial court refers to the parties' course of dealing, this phrase usually refers to the parties conduct prior to entering the contract, and in this case, it is the parties' conduct subsequent to entering the contract that is relevant and indicative of their intent. Compare Restatement (Second) of Contracts § 223(1) (defining course of dealing as "a sequence of *previous* conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct" (emphasis added)), with *id.* § 202(4) (stating that "any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement"). Therefore, we refer instead to the parties' performance under the contract.

years in calculating the rental increase using the increased basic rent. Although the calculation is not congruent with all of the contract language, it reflects the intent demonstrated by the language of the lease to link annual increases to the CPI and to limit annual increases to 4%. Therefore, the court did not err in interpreting the contract in this manner.

¶ 14. This resolution does not amount to a windfall for landlords as tenant asserts. As the trial court found, the outcome is equitable. First, it produces a reasonable result. The methodologies proposed by tenant and landlords resulted in a variation of $12,000 for the 2013 year — $57,836 using landlords' method and $45,820 using tenant's. The rent as calculated by the method employed by the parties during the life of the lease is in the middle at $54,060. Second, the result is equitable because the methodology behind the calculation is consistent with the parties' intent to link increases to the annual change in the CPI, while providing a 4% cap on the increase.

*Affirmed.*

¶ 15. **Dooley, J.,** concurring. I concur with the trial court and the majority that the lease terms governing annual rent adjustments are ambiguous. I do not agree, despite the track record of the parties, that the trial court's construction of the lease provisions is consistent with the language the parties adopted in the lease. I agree with Justice Robinson that landlords' position, even though recently adopted by them, better reconciles the provisions of the lease than the position of the tenant or the position of the majority and the trial court. Unfortunately, landlords' position, despite the presentation of it to the trial court and in their brief in this Court, is not before us, and we cannot adopt it. Thus, this is an unusual case in which I am required to vote to affirm a decision I believe is wrong.

¶ 16. **Robinson, J.,** concurring in the judgment. I concur in the majority's affirmance of the trial court's decision, but on a different basis. When the plain language of a contract is clear, the fact that the parties' course of performance has not complied with the requirements of the contract does not change the meaning of the contract. *Highridge Condo. Owners Ass'n v. Killington/Pico Ski Resort Partners, LLC*, 2014 VT 120, ¶ 22, 198 Vt. 44, 111 A.3d 427 (noting that "course of performance may be relevant in

interpreting an ambiguous contract" but may not be considered where contract is unambiguous).

¶ 17. In this case, I cannot conclude that the contract is ambiguous. It unequivocally requires that the Consumer Price Index of January 1, 1987, serve as the benchmark for calculating the cost-of-living increase applied to the basic rent (also a set benchmark rather than a floating amount) when the rent is recalculated each year. It also caps the increase in rent from one year to the next at 4%. In the face of the contract's clear language, the fact that the parties have divergent understandings of the contract and have implemented it in a way that departs from the plain meaning does not render it ambiguous. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 581, 556 A.2d 81, 85 (1988) ("[T]he fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous.").

¶ 18. I do not support the method for calculating annual rent that was adopted by the trial court because, as tenant rightly argues, it squarely conflicts with the requirements of the contract. The method actually used by landlords throughout the contract, and adopted by the trial court, applied a cost-of-living adjustment to each year's rent (the increased basic rent) based on the change in CPI from that year to the next. That method contravenes the contract's clear requirement in paragraph 9E that "in no event shall any cost of living increases be computed on the Increased Basic Rent."

¶ 19. On the other hand, tenant's proposed interpretation also misses the mark. Tenant argues that the 4% cap on "any annual increase" in paragraph 9B refers to the increase in the CPI from one year to the next, and that the CPI multiplier to be applied to the basic rent in any given year is the sum of the preceding years' CPI increases, capping the increase in each of the preceding years at 4%. The effect of this approach is to bake into every subsequent year's rent calculations the effect of the application of the 4% cap in any year in which the CPI grows by more than 4%, so that over time the rent payable lags further and further behind the rate of inflation. Not only does this not make sense in terms of the parties' likely intentions, but it ascribes a significance to the increase in the CPI between one year and the next when paragraph 9B of the contract expressly identifies the base year — 1987, and *not the prior year*, as the benchmark for assessing the change in the CPI. Under the terms of this contract, the increase

in CPI from one year to the next (as opposed to the increase in rent resulting from application of the CPI multiplier) is simply irrelevant, and the suggestion that the 4%ʳ cap applies to that irrelevant factor makes no sense.

¶ 20. For these reasons, I, like the majority, reject tenant's appeal. Because landlords did not cross-appeal the trial court's summary-judgment decision, I am left to support affirmance of the trial court's judgment.