2015 VT 61











B & C Management Vermont,
Inc. v. John, Ringey and Beck (2014-224)

 

2015 VT 61

 

[Filed 10-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 61
 
 


 


 
 
 No. 2014-224
 
 


 


 
 
 B & C Management Vermont,
 Inc.
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windham Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
 Stephen R. John, Wynetta E.
 John, Stephen R. John as Executor of Estate of Amelia M. John, Catherine
 John, Richard John, Stephanie Ringey, Michelle John and Cynthia Beck
 
 
  
 January Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 John
 P. Wesley, J.
 
 
 
 
  
 
 


Peter M. Lawrence of Barr Sternberg Moss Lawrence &
Silver, PC, Bennington, for 

  Plaintiff-Appellant.

 

Richard C. Carroll of Potter Stewart, Jr. Law Offices, P.C.,
Brattleboro, for 

  Defendants-Appellees.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund,
Robinson and Eaton, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Tenant appeals the court’s order
granting summary judgment in favor of defendant landlords on the parties’
dispute concerning a rental-increase provision of the lease.  On appeal,
tenant argues that the court erred in using extrinsic evidence to interpret a
portion of the lease tenant believes is unambiguous, and in reaching an
inequitable result.  We affirm.

¶ 2.            
The basic facts are not disputed.  Tenant is the successor lessee
to a thirty-year lease on a commercial property in Brattleboro.  The lease
was executed in 1987.  The lease established a basic annual rent of
$26,500 in paragraph 8, and then set forth how the rent would increase in subsequent
years.  The relevant portion of the lease on the annual increase is as
follows:

  9. 
INCREASED BASIC RENT DUE TO COST OF LIVING INCREASES

 

  A. For the
purposes of this Paragraph, the term “Price Index” shall mean the Consumer
Price Index (C.P.I.-U) For All Urban Consumers With The Population Size Class D
(Less than 75,000 in population) For The Northeast Region, or a successor or
substitute index appropriately adjusted.

 

  B. Tenant
agrees that if the Price Index as of January 1, 1988 and on any subsequent
January 1 of the remaining years of the terms of this Lease Agreement reflects
an increase in the cost of living over and above such cost as reflected in the
Price Index on January 1, 1987 (the “base index year”), an adjustment of the
Basic Rent payable under Paragraph 8 shall be made based on the percentage
difference.  This shall be called “Increased Basic Rent.”  However,
in no event shall any annual increase be more than four percent (4%) per year.

 

  C. The
percentage increase thus determined shall be multiplied by the Basic Rent
payable by Tenant under Paragraph 8 and the aggregate of this sum and the Basic
Rent set forth in Paragraph 8 shall represent “Increased Basic Rent” payable by
Tenant in equal monthly installments during the remaining years of the terms of
this Lease Agreement, including any option periods.  The Basic Rent for
purposes of this paragraph is Twenty-Six Thousand Five Hundred and no/100
Dollars ($26,500.00) NOT Thirteen Thousand Two Hundred Fifty and no/100 Dollars
($13,250.00).

 

  . . . .

 

  E. In
computing any increases under this Paragraph 9 the Basic Rent shall at all
times be deemed to be the Basic Rent set forth in Paragraph 9 and in no event
shall any cost of living increases be computed on the Increased Basic Rent. 

 

  F. Under no
circumstances shall the rent ever decrease or be less than the amount being
paid at the time of any period of readjustment pursuant to this
paragraph.  

 

¶ 3.            
Pursuant to the rent-increase provision, each year landlords calculated
the annual rent increase and sent a notice to tenant.  The increase was
calculated as the percentage change in the CPI from the previous year to the
current year multiplied by the previous year’s rent.  This increase was
then added to the prior year’s rent to arrive at the new annual rent.  In
March 2007, tenant assumed the lease.  From 2008 to 2012, landlords sent
rent-increase notices and tenant paid rent annually adjusted for increases,
calculated according to this method, without objection.  

¶ 4.            
In 2013, landlords sent the annual rent increase notice to
tenants.  The notice reflected the new 2013 rent as $54,060.  Tenant
objected to the amount of rent and the calculation method for rental
increases.  The parties were unable to resolve their dispute, and tenant
filed an action seeking both a declaration that its interpretation of the lease
language was correct and damages for overpaid rent.  

¶ 5.            
Tenant moved for summary judgment.  Tenant claimed that the plain
language of the lease agreement precluded landlords from using the increased
basic rent to compute rental increases.  Tenant alleged that the method of
calculation was inconsistent with the language of the lease because the rent
was calculated based on the increased basic rent and the lease agreement
expressly states in paragraph 9E that “in no event shall any cost of living
increase be computed on the Increased Basic Rent.”  Tenant claimed that
the method for calculating the rent increases most consistent with the lease
language was to calculate the difference between the CPI of the current year
and the previous year, subject to the 4% cap, add that to the cumulative change
in the CPI since 1987, and then multiply it by the basic rent.  This
increase would then be added to the basic rent.  Using this method, for
2013, tenant calculated the rent as $45,819.83.  

¶ 6.            
Landlords also moved for summary judgment.  Landlords argued that
the plain language of the lease agreement required calculating the rent
increase in a different way.  Landlords’ method involved determining the
percentage increase in the CPI between the current year and 1987, multiplying
this by the basic rent of $26,500, and adding that to the basic rent. 
Landlords claimed that the 4% cap should apply to the annual increase in rent,
not the percentage change in the CPI.  Using this method, landlords
calculated the 2013 rent as $57,836.  In the alternative, landlords argued
that if the court determined the lease as ambiguous, the court should interpret
the rent-increase provision based on the method of calculation used by the
parties over the preceding years.  

¶ 7.            
The trial court determined that the contract language describing the
process for calculating annual rent increases was “highly ambiguous.”  The
court explained that the main ambiguities were in paragraph 9B, which states
that the adjustment in rent will be based on the percentage difference in the
CPI, but does not specify whether the difference is calculated with respect to
the prior year’s index or the 1987 index.  Further, the lease states that
increases are limited to 4% without specifying which variable is subject to the
cap—the year-to-year increase in CPI or the actual increase in rent.

¶ 8.            
In interpreting of the rent-increase provision, the court determined
that the parties’ apparent intent in establishing the rent-increase provision
was two-fold: to account for inflation by incorporating the CPI, and also to
limit annual rent increases by imposing a 4% cap.  The court rejected both
parties’ interpretations of the lease language as inconsistent with at least
one of these purposes.  The court rejected landlords’ assertion that the
4% cap was intended to be measured by comparing the current-year CPI with the
1987 CPI because this would result in an increase greater than 4% for every
year after 1988 and therefore would simply increase rent by a set 4% each year,
which would negate the language in the lease incorporating the annual CPI
increase.  The court further concluded, however, that applying the 4% cap
to year-to-year increases in the percent CPI while using the calculation tenant
offered would be inconsistent with the parties’ intent because the increases
would have little correspondence to actual inflation and would steadily
diminish over the life of the lease. 

¶ 9.            
Instead, the court looked to the parties’ performance under the
contract, and concluded that while the calculation employed by the parties
during the life of the lease had departed from some language in the contract,
it best reflected the parties’ intention.  The court further determined
that this result was the most equitable.  Therefore, the court granted summary
judgment to landlords, and interpreted the lease provision to incorporate the
calculation used by the parties during the prior years of the lease.

¶ 10.        
On appeal, tenant argues that only certain parts of the contract are
ambiguous and that the court erred in using extrinsic evidence to change the
effect of an unambiguous term.  Tenant further asserts that the court’s
award of summary judgment to landlords is inequitable and results in a windfall
to landlords.

¶ 11.        
Our review of summary judgment is de novo.  Handverger v. City
of Winooski, 2011 VT 134, ¶ 7, 191 Vt. 84, 38 A.3d 1158.  Judgment is
appropriate if there are no disputed material facts and the moving party is
entitled to judgment as a matter of law.  V.R.C.P. 56(a).  Here, there
is no dispute as to the facts; the parties dispute the proper interpretation of
their contract, which is a question of law that we review de novo.  Dep’t
of Corrs. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 11, 183 Vt. 348, 950
A.2d 1201.  A contract is interpreted foremost to give effect to the
parties’ intent, which is reflected in the contractual language, if that
language is clear.  R & G Props., Inc. v. Column Fin., Inc.,
2008 VT 113, ¶ 17, 184 Vt. 494, 968 A.2d 286.  If the meaning of the
contract is ambiguous, however, the issue then becomes a mixed question of law
and fact.  Cate v. City of Burlington, 2013 VT 64, ¶ 15, 194 Vt.
265, 79 A.3d 854.  Extrinsic evidence may be used to aid in the
interpretation of a contract if the contract terms are ambiguous. 
“Ambiguity will be found where a writing in and of itself supports a different
interpretation from that which appears when it is read in light of the
surrounding circumstances, and both interpretations are reasonable.”  Isbrandtsen
v. N. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84 (1988).

¶ 12.        
On appeal, tenant argues the contract is ambiguous, but only in part.[1]  Tenant argues that while paragraph
9B is ambiguous and its interpretation should be guided by extrinsic evidence
of the parties’ intent, paragraph 9E is unambiguous and should be applied as
written to preclude computing cost-of-living increases based on the increased
basic rent.  

¶ 13.        
Tenant’s argument is untenable.  Paragraph E cannot be excised from
the rest of the contractual language on the calculation of the rent increase
because the contract “must be viewed in its entirety.”  See id. at
580, 556 A.2d at 85 (directing that contract be read, to extent possible, as “a
harmonious whole”).  When the rent-increase provision is viewed in its
entirety and in light of the surrounding circumstances, we agree with the trial
court that ambiguity is apparent.  See In re Estate of Price, 2006
VT 62, ¶ 10, 180 Vt. 548, 904 A.2d 1196 (mem.) (reiterating that contract term
does not exist in vacuum and must be assessed in light of surrounding
circumstances and language of entire agreement); Restatement (Second) of
Contracts § 212 cmt. b (1981) (“Any determination of meaning or ambiguity
should only be made in the light of the relevant evidence of the situation and
relations of the parties, the subject matter of the transaction, preliminary
negotiations and statements made therein, usages of trade, and the course of
dealing between the parties.”).  The lease language contains
inconsistencies about how the yearly increase should be computed—from the basic
rent or the previous year’s rent—and it is unclear how to apply the 4%
cap.  Therefore, to determine the correct meaning of the contract, the
court properly considered extrinsic evidence of the parties’ intent.  One
such indicator is the parties’ conduct in performing under the contract.[2]  See Bissonnette v. Wylie,
166 Vt. 364, 371-72, 693 A.2d 1050, 1055 (1997) (explaining that parties’
understanding of agreement as reflected in their actions is relevant to
interpreting ambiguous agreement); Howard v. Maple Leaf Farm Assocs., Inc.,
151 Vt. 555, 557, 563 A.2d 996, 997 (1989) (relying on parties’ subsequent
conduct to inform meaning of indefinite contract).  Here, the parties’
actions in performing under the contract are highly relevant.  That
evidence shows that both sides acquiesced for many years in calculating the
rental increase using the increased basic rent.  Although the calculation
is not congruent with all of the contract language, it reflects the intent
demonstrated by the language of the lease to link annual increases to the CPI
and to limit annual increases to 4%.  Therefore, the court did not err in
interpreting the contract in this manner.

¶ 14.        
This resolution does not amount to a windfall for landlords as tenant
asserts.  As the trial court found, the outcome is equitable.  First,
it produces a reasonable result.  The methodologies proposed by tenant and
landlords resulted in a variation of $12,000 for the 2013 year—$57,836 using
landlords’ method and $45,820 using tenant’s.  The rent as calculated by
the method employed by the parties during the life of the lease is in the middle
at $54,060.  Second, the result is equitable because the methodology
behind the calculation is consistent with the parties’ intent to link increases
to the annual change in the CPI, while providing a 4% cap on the increase.

Affirmed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 
 
 
 


¶ 15.        
DOOLEY, J., concurring.   I concur with the trial court
and the majority that the lease terms governing annual rent adjustments are
ambiguous.  I do not agree, despite the track record of the parties, that
the trial court’s construction of the lease provisions is consistent with the
language the parties adopted in the lease.  I agree with Justice Robinson
that landlords’ position, even though recently adopted by them, better
reconciles the provisions of the lease than the position of the tenant or the
position of the majority and the trial court.  Unfortunately, landlords’
position, despite the presentation of it to the trial court and in their brief
in this Court, is not before us, and we cannot adopt it.  Thus, this is an
unusual case in which I am required to vote to affirm a decision I believe is
wrong.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
  
 
 


 

¶ 16.        
ROBINSON, J., concurring in the judgment.   I concur in
the majority’s affirmance of the trial court’s decision, but on a different
basis.  When the plain language of a contract is clear, the fact that the
parties’ course of performance has not complied with the requirements of the
contract does not change the meaning of the contract.  Highridge Condo.
Owners Ass’n v. Killington/Pico Ski Resort Partners, LLC, 2014 VT 120,
¶ 22, ___ Vt. ___, ___ A.3d ___ (noting that “course of performance may be
relevant in interpreting an ambiguous contract” but may not be considered where
contract is unambiguous).

¶ 17.         In
this case, I cannot conclude that the contract is ambiguous.  It
unequivocally requires that the Consumer Price Index of January 1, 1987, serve
as the benchmark for calculating the cost-of-living increase applied to the
basic rent (also a set benchmark rather than a floating amount) when the rent
is recalculated each year.  It also caps the increase in rent from one
year to the next at 4%.  In the face of the contract’s clear language, the
fact that the parties have divergent understandings of the contract and have
implemented it in a way that departs from the plain meaning does not render it
ambiguous.  See Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 581,
556 A.2d 81, 85 (1988) (“[T]he fact that a dispute has
arisen as to proper interpretation does not automatically render the language
ambiguous.”).

¶ 18.        
I do not support the method for calculating annual rent that was adopted
by the trial court because, as tenant rightly argues, it squarely conflicts
with the requirements of the contract.  The method actually used by
landlords throughout the contract, and adopted by the trial court, applied a
cost-of-living adjustment to each year’s rent (the increased basic rent) based
on the change in CPI from that year to the next.  That method contravenes
the contract’s clear requirement in paragraph 9E that “in no event shall any
cost of living increases be computed on the Increased Basic Rent.”

¶ 19.        
On the other hand, tenant’s proposed interpretation also misses the
mark.  Tenant argues that the 4% cap on “any annual increase” in paragraph
9B refers to the increase in the CPI from one year to the next, and that the
CPI multiplier to be applied to the basic rent in any given year is the sum of
the preceding years’ CPI increases, capping the increase in each of the
preceding years at 4%.  The effect of this approach is to bake into every
subsequent year’s rent calculations the effect of the application of the 4% cap
in any year in which the CPI grows by more than 4%, so that over time the rent
payable lags further and further behind the rate of inflation.  Not only
does this not make sense in terms of the parties’ likely intentions, but it
ascribes a significance to the increase in the CPI between one year and the
next when paragraph 9B of the contract expressly identifies the base year—1987,
and not the prior year, as the benchmark for assessing the change in the
CPI.  Under the terms of this contract, the increase in CPI from one year
to the next (as opposed to the increase in rent resulting from application of
the CPI multiplier) is simply irrelevant, and the suggestion that the 4% cap
applies to that irrelevant factor makes no sense.

¶ 20.        
For these reasons, I, like the majority, reject tenant’s appeal. 
Because landlords did not cross-appeal the trial court’s summary-judgment
decision, I am left to support affirmance of the trial court’s judgment.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 


 














[1] 
On appeal, landlords argue that the court erred in concluding that the lease
was ambiguous.  Landlords contend that the lease is unambiguous, and that
the court should have adopted the rent-increase calculation put forward in
their motion for summary judgment, which results in a higher rent. 
Landlords did not file a cross-appeal, and therefore they are precluded from
seeking to change the court’s order on appeal.  See Huddleston v. Univ.
of Vt., 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (explaining that
appellee seeking to challenge trial court’s order must file timely
cross-appeal).





[2] 
Although the trial court refers to the parties’ course of dealing, this phrase
usually refers to the parties conduct prior to entering the contract, and in
this case, it is the parties’ conduct subsequent to entering the contract that
is relevant and indicative of their intent.  Compare Restatement (Second)
of Contracts § 223 (defining course of dealing as “a sequence of previous
conduct between the parties to an agreement which is fairly to be regarded as
establishing a common basis of understanding for interpreting their expressions
and other conduct” (emphasis added)), with id. § 202(4) (stating
that “any course of performance accepted or acquiesced in without objection is
given great weight in the interpretation of the agreement”).  Therefore,
we refer instead to the parties’ performance under the contract.